A98A1740. IN THE INTEREST OF C. M. et al., children.
(513 SE2d 773)

SMITH, Judge.

This is an appeal by a mother from an order terminating her parental rights to her two minor children, C. M. and M. M.[1] Appellant contends there was insufficient evidence to find that M. M. was deprived or that the deprivation of M. M. and C. M. was likely to continue. We disagree and affirm.

Before considering whether to enter an order terminating parental rights, the trial court must first determine whether there exists "clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-81 (a). To reach this determination, the court must find that the child is deprived within the meaning of OCGA § 15-11-2

---

[1] In the same order, the court declined to terminate the parental rights of the father.

(8) (A) due to a lack of proper parental care or control by the parent in question, that this state of affairs is likely to continue or is not likely to be remedied, and that such deprivation will or is likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-81 (b) (4) (A). If the court makes this preliminary determination based on clear and convincing evidence, termination of parental rights is authorized if the court likewise finds such action will best serve the child's interest and needs, "including the need for a secure and stable home." OCGA § 15-11-81 (a).

On appeal of a termination of parental rights, the reviewing court defers to the lower court in the areas of factfinding and weighing of the evidence, and we must affirm unless the appellate standard is not met. *In the Interest of K. S. W.*, 233 Ga. App. 144, 147 (1) (503 SE2d 376) (1998). This court also views the evidence in the light most favorable to the appellee. *In the Interest of A. M. V.*, 222 Ga. App. 528, 529 (474 SE2d 723) (1996).

So viewed, the evidence shows that in August 1994, appellant took her two-year-old son, C. M., to the Kennestone Hospital Emergency Room. He was very sick with a high fever, and E. coli bacteria, a component of human feces, were found in his bloodstream. C. M. was transferred to Scottish Rite Hospital. While alone with C. M. in his room at Scottish Rite, appellant injected the contents of a syringe, filled with a mixture of feces and urine, into C. M.'s intravenous tube. A hospital camera recorded appellant's action. Appellant was arrested and charged with cruelty to children and aggravated assault. In April 1996, she entered a non-negotiated plea of guilty to the charges and was sentenced to seven years concurrent as to each count, with five years to be served on probation.

In late August 1994, the Juvenile Court of Cobb County entered an order placing C. M. in temporary custody of the Cobb County Department of Family & Children Services ("DFACS"). In September 1994, the court entered an order returning legal custody of C. M. to his father, directing that C. M.'s paternal grandparents retain physical custody of C. M. and his one-year-old sister, M. M. Following a deprivation hearing in January 1995, the court again awarded temporary legal custody of both C. M. and M. M. to DFACS.

In August 1996, the court entered an order extending DFACS's custody of both children and finding clear and convincing evidence that the children were deprived. The record contains no evidence that this order was ever appealed.

In October 1996, DFACS filed a petition for termination of the parental rights of appellant and her husband. At the termination hearing, appellant testified that she injected C. M. with a used syringe at the Scottish Rite Hospital because she had been raped when she was 18; she had given up a child for adoption; her brother had

died; and she was experiencing marital problems. Appellant acknowledged that she had injected C. M. once before with the same mixture and that "the whole thing was very dangerous."

C. M. had been admitted to the emergency room approximately twenty-eight times in the first two years of his life. Aside from ear infections, no evidence was presented that C. M. had any medical problems warranting so many emergency room visits. No evidence was presented that appellant was observed injecting feces into or otherwise harming her younger child, M. M. But evidence was presented that M. M. had been admitted to the hospital approximately nineteen times in the first nine months of her life, although she had no documented medical problems other than common colds. In proportion to her age, the number of hospital emergency room visits experienced by M. M. exceeded that of C. M. Since the children were separated from appellant, neither child has had any serious medical problems.

Beatrice Yorker, an associate professor of nursing and associate provost at Georgia State University, testified concerning a condition known as Munchausen Syndrome by Proxy (MSP). After hearing testimony regarding her degrees in nursing, psychiatric nursing, and law, as well as her research and publications regarding MSP, the court, over objection, qualified her as an expert with regard to MSP.

Yorker testified that MSP is a disorder in which a parent, usually a mother, induces or fabricates an illness in a child for the purpose of obtaining medical or some other kind of attention. She stated that MSP is a form of child abuse that may take the form of falsifying illness or actively inducing illness in a child. She characterized appellant's injection of urine and feces into C. M.'s bloodstream as a relatively common form of active induction of MSP. Marital strife is a common "trigger" for MSP, as is criticism of the mother in her parenting skills. Yorker testified that from her review of the medical records, observation of the children's improvement upon separation from the parent, as well as "most definitively" by covert surveillance, it was her opinion that appellant fit the characteristics of MSP.

Noting that there is no record of even a single successful treatment for active induction of MSP, she testified that no treatment has been discovered for MSP. She also testified without objection to "very strong evidence" that once a child has been identified as a victim of MSP, other children are at risk for abuse. In Yorker's opinion, MSP parents should not be allowed unsupervised access to children. Young children, particularly pre-verbal children, are more often victims of MSP, although some children continue to be abused through their teenage years.

1. The mother first contends that the evidence was insufficient to support the juvenile court's finding that M. M. was deprived. But it is

well established that, when no appeals are taken from juvenile court orders finding that a child was deprived, an appellant is bound by that finding and any challenges to those orders are not preserved for appeal. *In the Interest of E. C.*, 225 Ga. App. 12, 14-15 (482 SE2d 522) (1997). Here, the record shows no appeal of the order finding that both C. M. and M. M. were deprived. Appellant therefore is bound by that finding, and this enumeration of error is not preserved for appeal.

2. We next consider the mother's contention that the evidence presented at the termination hearing did not support the juvenile court's conclusion that the deprivation of C. M. and M. M. was likely to continue. Evidence of past parental conduct resulting in deprivation may be considered in determining whether the deprivation is likely to continue and cause harm to the children. *In the Interest of J. S.*, 232 Ga. App. 876, 879 (502 SE2d 788) (1998); *A. M. V.*, supra, 222 Ga. App. at 531-532. Moreover, in a termination case, evidence that is one or two years old is not outdated, because there will necessarily be some passage of time between the date the children are removed from the parents' home and the date of the termination hearing. Id. at 531. The juvenile court is not required to reunite the children with appellant in order to obtain current evidence of deprivation. *E. C.*, supra, 225 Ga. App. at 16. Therefore, evidence of appellant's past conduct is relevant to the determination of whether the deprivation of the children is likely to continue.

In determining that appellant's lack of proper parental care or control is the cause of such deprivation, a court may consider many factors, including: the parent's conviction and imprisonment for a felony having a demonstrably negative effect on his or her relationship with the child; egregious conduct or evidence of past egregious conduct of the parent toward the child or another child of a physically, emotionally, or sexually cruel or abusive nature; or an injury or death of a sibling under circumstances that constitute substantial evidence that such injury or death resulted from parental neglect or abuse. OCGA § 15-11-81 (b) (4) (B) (iii), (iv), (vi).

Ample evidence of appellant's egregious conduct toward the children supported the trial court's conclusion that deprivation was likely to continue. C. M. was admitted to the emergency room approximately twenty-eight times in the first two years of his life, but since appellant lost custody he has had only common childhood illnesses. Appellant acknowledged, and a video camera recorded, her injection of C. M. with a used syringe full of her own feces and urine. Although she realized that "the whole thing was very dangerous," appellant admitted that this was not the first time she had injected C. M. with such a mixture. The deliberate placing of her son's life in jeopardy certainly was egregious conduct; as a result, appellant pled guilty to

cruelty to children and aggravated assault, and was imprisoned.

With respect to M. M., the evidence of C. M.'s abuse showed appellant's past egregious and abusive conduct toward M. M.'s sibling, as well as an injury of a sibling with substantial evidence that appellant committed the abuse, was convicted of it, and was imprisoned. OCGA § 15-11-81 (b) (4) (B) (iii), (iv), (vi). Furthermore, evidence was presented that M. M. received emergency room treatment approximately nineteen times in the first nine months of her life, although she had no documented illnesses other than colds. This pattern ceased, as it did with C. M., when she left appellant's custody.

The evidence established that appellant suffers from MSP. Her past egregious conduct toward C. M. established that she is an active inducer of MSP. Uncontradicted expert testimony was presented that there is no treatment available for active inducers of MSP and that appellant will always suffer from MSP. The expert also testified that appellant is likely similarly to abuse another child. Given appellant's past egregious conduct, in conjunction with expert testimony that such conduct was likely to continue and to include other children and that there is no treatment for appellant's condition, the court properly concluded that the children will likely be deprived in the future.

Appellant contends that the expert's testimony was conflicting and insufficient to establish present unfitness. This court, however, does not weigh the evidence or determine the credibility of witnesses; it defers to the trial court's factfinding unless the appellate standard is not met. *K. S. W.*, supra, 233 Ga. App. at 147 (1). Appellant has failed to enumerate as error, to assert specifically in argument, or to cite authority for any challenge to Yorker's qualifications or the admissibility of the evidence upon which she relied in her testimony. This issue therefore is abandoned on appeal. *Schill v. A.G. Spanos Dev.*, 217 Ga. App. 260, 262 (457 SE2d 204) (1995).

Appellant cites the only other Georgia decision dealing with MSP and relies upon its holding, but that case is both procedurally and factually inapposite here. *In the Interest of M. A. V.*, 206 Ga. App. 299 (425 SE2d 377) (1992), overruled on other grounds, *In the Interest of J. P.*, 267 Ga. 492 (480 SE2d 8) (1997). In *M. A. V.*, we found the evidence insufficient to establish that the sibling of a victim of MSP was deprived so as to support a transfer of temporary custody to DFACS. Id. at 302 (1). The appellant in *M. A. V.* filed a timely appeal from that custody order, in contrast to appellant here, who failed to appeal the custody order finding that M. M. was deprived and thus has not preserved that issue on appeal. See *In the Interest of J. M. D.*, 221 Ga. App. 556, 558 (472 SE2d 123) (1996). More importantly, M. A. V. did not live with his mother at the time she abused his brother and, in fact, had never lived with her. *M. A. V.*, supra at 300. In contrast, M. M. was living with appellant at the time she abused C. M.

Finally, the only evidence of deprivation of the child in *M. A. V.* was the testimony from an earlier termination hearing regarding the abused sibling. Id. at 300. The mother's rights to M. A. V. were not in issue at that time, and she had no opportunity to cross-examine witnesses with regard to M. A. V. Id. at 302 (2). Here, evidence was adduced with respect to both children. M. M.'s medical history displayed the same pattern of unexplained numerous emergency room visits as that of C. M., and an expert testified specifically with regard to the likelihood that M. M. would be a victim of MSP.

For these reasons, we conclude that clear and convincing evidence was presented that the deprivation caused by appellant was likely to continue and that the termination of appellant's parental rights was in the best interests of the children.

*Judgment affirmed. Johnson, C. J., and Barnes, J., concur.*

DECIDED MARCH 11, 1999.

*Culp & Smith, John C. Culp*, for appellant.
*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, Sanders B. Deen*, for appellee.