A99A2477. IN THE INTEREST OF A. M. L., a child.
(527 SE2d 614)

MILLER, Judge.

Because of his parents' inability to care for him, A. M. L. has bounced from one caretaker to another, amounting to fifteen caretaker changes from the time he was four until he was eleven. The instability has caused him psychological damage and resulted in

---

behavioral misconduct. Finding the mother's disabling mental disorder is likely to continue, the juvenile court terminated her parental rights. She appeals, claiming insufficiency of the evidence. As there was evidence from which a factfinder could find clear and convincing evidence of the criteria set forth in OCGA § 15-11-81 (b), we affirm.

1. Our responsibility as an appellate court is clear:

> Construing the evidence most favorably to the findings of the court, the question on appeal is whether a rational trier of fact could have found clear and convincing evidence (a) of parental misconduct or inability and (b) that terminating parental rights was in the best interest of the child. Parental misconduct or inability is shown by evidence (i) the child is deprived, (ii) lack of parental care caused the deprivation, (iii) such is likely to continue, and (iv) the continued deprivation is likely to cause serious harm to the child.[1]

We will address the factors seriatim.

(a) *Deprivation.* Over the seven years of the child's repeated displacement, the juvenile court found on five separate occasions, including a finding most recently in April 1998, that A. M. L. was deprived. As these orders were unappealed, the mother was bound by these findings for purposes of the termination hearing.[2]

(b) *Lack of Proper Parental Care and Control.* Since each of the five orders found that the mother's lack of parental care and control caused the deprivation, she was bound by these findings also. Moreover, the evidence established that the mother's mental disorder, which was medically verified, caused the deprivation. Because of her disorder, she gave custody of all three of her children to her ex-husband soon after their divorce in 1992. Four years later, she recovered sufficiently to receive full legal custody of the children, only to return the children to the Department of Family & Children Services ("DFACS") six months later on the ground that she felt that she could not control them due to her mental depression. After surreptitiously taking physical custody of A. M. L. from a foster home, she voluntarily returned him to DFACS in April 1998, again because of her mental condition.

A July 1998 psychological evaluation found she had a mood disorder with anxiety and an atypical personality disorder with borderline and cyclothymic features. An August 1998 medical evaluation

---

[1] (Citations omitted.) *In the Interest of K. D. S.*, 237 Ga. App. 865 (1) (517 SE2d 102) (1999); see OCGA § 15-11-81.

[2] *K. D. S.*, supra, 237 Ga. App. at 865 (1) (a); see *In the Interest of S. C. M. H.*, 238 Ga. App. 159, 160 (1) (517 SE2d 598) (1999).

diagnosed her as having a bipolar disorder with chronic depression. Although the July report indicated that she should have the cognitive skills to parent A. M. L., experience over the years proved otherwise. In addition to not being able to control A. M. L. when she did have him in her care, she had worked a total of only one day in the last two years and only hoped to start a job two weeks after the hearing; she had no car but planned on getting one; her anticipated day care provider had previously lost children to DFACS; her phone was disconnected; she had lived in four different locations in the last thirteen months; she had provided no child support in the last two years; she had cared for eleven-year-old A. M. L. only for the first four years of his life and for two short intervals that resulted in her giving him up again; and in explaining why she and her new husband were separated, she confessed, "I've got too many of my own [problems] to deal with to have to deal with his problems also."

The court did not err in finding under OCGA § 15-11-81 (b) (4) (B) (i) that the mother's mental and emotional deficiencies left A. M. L. without proper parental care and control.

(c) *Cause of Deprivation Likely to Continue.* Past conduct of the mother may reflect whether the cause of deprivation is likely to continue.[3] Evidence that is a couple of years old is not necessarily outdated, as there will be some passage of time between the removal of the child and the termination hearing.[4]

Here, as of the date of the termination hearing, the mother still had not started a job or obtained a car; she confessed to having so many problems that she could not deal with another's; her son had psychological problems and was rambunctious; she continued to take medication and therapy to treat her depression; one of her other two children (also in foster care) would visit with her only for a maximum of thirty minutes; and when visiting the foster home for her other two children during the six months prior to the termination hearing, she would leave before the children got home from school. The juvenile court hearing the mother's testimony specifically found that her actions in court demonstrated ongoing mental problems and that the mother's courtroom demeanor convinced the court that she would let her son down again. The court did not err in finding clear and convincing evidence that the cause of the deprivation would likely continue.

The mother presented evidence that recent treatment for her disorder was having success. But the court could find that her conduct over the seven years, the medical reference to her condition as

---

[3] *K. D. S.*, supra, 237 Ga. App. at 866 (1) (c); see *S. C. M. H.*, supra, 238 Ga. App. at 162 (2).

[4] *In the Interest of C. M.*, 236 Ga. App. 874, 877 (2) (513 SE2d 773) (1999).

chronic, and the totality of the evidence set forth above were better predictors of her future conduct.[5] A few months of partial stability do not establish that the parent is capable of maintaining the progress.[6] In considering recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation.[7]

(d) *Continued Deprivation Likely to Cause Harm.* The same evidence authorized the factfinder to conclude that the continued deprivation would likely cause serious physical, mental, emotional, or moral harm to the child.[8] A. M. L., who had been repeatedly abandoned by his caregivers, consequently had serious behavioral problems and felt animosity toward his mother who had so often disappointed him in the past. His fragile psyche could not handle another disappointment from his mother.

2. The evidence showing the existence of parental misconduct or inability also supported a finding that the termination of the mother's parental rights would be in the child's best interest.[9] Moreover, visits to the mother caused psychological trauma to her other two children, and A. M. L. was doing well in the custody of DFACS.

Because a rational trier of fact could have found clear and convincing evidence of the statutory factors, the court did not err in terminating the mother's parental rights.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED JANUARY 11, 2000 —
RECONSIDERATION DENIED JANUARY 31, 2000.

*Amelia G. Pray,* for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Sanders B. Deen,* for appellee.

---

[5] Compare *In the Interest of C. G.*, 235 Ga. App. 23, 24 (508 SE2d 246) (1998) (no medical evidence of mental condition or of possibility it would continue).

[6] *In the Interest of J. S.*, 232 Ga. App. 876, 880 (1) (502 SE2d 788) (1998).

[7] *In the Interest of C. D. P.*, 238 Ga. App. 393, 395 (519 SE2d 37) (1999).

[8] *K. D. S.*, supra, 237 Ga. App. at 867 (1) (d).

[9] See id. at 867 (2); see also *In the Interest of A. S. H.*, 239 Ga. App. 565, 571 (2) (521 SE2d 604) (1999).