534 S.E.2d 109 (2000)
243 Ga. App. 626
In the Interest of L.S.D. et al., children.
No. A00A0024.
Court of Appeals of Georgia.
April 17, 2000.
*110 Saunders P. Jones IV, Marietta, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Laura W. Hyman, Assistant Attorneys General, Robert G. Nardone, Avondale Estates, for appellee.
MILLER, Judge.
The question in this case is whether a mother's recent improvements in behavior require the juvenile court to deny a petition to terminate her parental rights. We hold they do not and affirm.
In 1994, appellant, the natural mother, twice struck her 14-year-old child, N.H., with a hammer and also attacked the child with a screwdriver, resulting in her guilty plea to a simple assault charge. N.H. was found to be deprived, and the reunification plan provided that appellant would develop coping skills and seek drug treatment.
In a 1996 deprivation hearing, appellant stipulated that she whipped and severely injured her two younger children (eight-year-old I.S.L. and eleven-year-old L.S.D.) with an electrical cord, resulting in her conviction on two counts of cruelty to children. Consequently, I.S.L. and L.S.D. were found deprived and placed in foster care while appellant worked on meeting the mandates of her reunification plans, including (1) improving her parental skills by attending parenting and anger management classes and (2) receiving evaluation and treatment for her chronic alcohol and drug abuse.
In November 1998, the Department of Family & Children Services (DFACS) petitioned to terminate appellant's parental rights as to I.S.L. and L.S.D., alleging she failed to maintain a meaningful parental role and failed to comply with the court-ordered reunification plans.[1] The juvenile court granted the petition, which appellant appeals on sufficiency of the evidence.
Appellate review of parental termination orders is clear:
Construing the evidence most favorably to the findings of the court, the question on appeal is whether a rational trier of fact could have found clear and convincing evidence (a) of parental misconduct or inability and (b) that terminating parental rights was in the best interest of the child. Parental misconduct or inability is shown by evidence (i) the child is deprived, (ii) lack of parental care caused the deprivation, (iii) such is likely to continue, and (iv) the continued deprivation is likely to cause serious harm to the child.[2]
Appellant's sole ground for appeal is that the evidence did not suffice to sustain a finding that her parental misconduct was likely to continue or would not likely be remedied. She does not contest that her parental misconduct caused her children to be deprived, that continued deprivation would seriously harm the children, or that termination of her parental rights would be in the best interests of the children.
"Evidence of past parental conduct resulting in deprivation may be considered in determining whether the deprivation is likely *111 to continue and cause harm to the children."[3] The juvenile court need not reunite the children with the parent to obtain current evidence of deprivation.[4] Evidence that is one or two years old is still relevant, as there will necessarily be some passage of time between the removal of the children and the termination hearing.[5]
Here appellant engaged in egregious physical abuse of her children under the guise of discipline.[6] For the felony offenses against I.S.L. and L.S.D., her 12 years of probation includes a condition that she have no unsupervised contact with the children. This condition precludes her from independently caring for the children or receiving custody of them during their minority and, thus, necessarily has a demonstrable negative effect on the quality of the parent-child relationship.[7] Evidence also showed a history of excessive use of intoxicating liquors and drugs.[8]
She also failed to meet reunification plan goals.[9] Despite a June 1994 and a July 1997 case plan mandate that she receive substance abuse treatment, she did not complete an eight-week substance abuse course until after the November 1998 termination petition was filed. In fact, in February 1998 she admitted to the court that she continued to drink during her alleged rehabilitation, which led the court to delete her reunification goals. The 1994 and 1997 case plans also directed that she attend a parenting course, which six-week course she did not complete until, again, after the petition was filed.
Appellant also failed to meet the visitation goals of the case plans.[10] She failed to visit any of the children until December 1997, and from then until the November 1998 petition, she visited them only twice (one instance was pure happenstance). After the filing of the petition, appellant became more diligent, but by then her children, who had bonded with the foster parent, wanted no contact with her and refused to attend. Finally, a 1997 psychological evaluation concluded that she had poor tolerance for stress and pressure and difficulties with impulse control.
Appellant nevertheless claims that there was insufficient evidence that her deleterious behavior would continue. She testified at the February 1999 termination hearing that since June 1998 she had been sober and that for the last month she had been attending AA meetings three or four times a week. She also put on two witnesses who testified that she was a changed woman. And she documented her recent completion of the parenting and substance abuse courses.
Recent successful treatment for a disorder does not require the court to conclude that a parent's long history of misconduct will now cease. First, the court need not accept that a disorder such as alcoholism was the sole cause of the misconduct, particularly where, as here, a psychological evaluation found other personality disorders independent of alcoholism. Second, a court may find that a parent's conduct over the years is a better predictor of future conduct.[11] "A few months of partial stability do not establish that the parent is capable of maintaining the progress."[12] In fact, improvement that takes place only after the termination petition is filed is often unconvincing.[13] The evidence was also undisputed that during their minority appellant would not be able to *112 care for the children, as her probation forbade her from having unsupervised contact with them.
What weight to give recent improvements is a question for the trier of fact. Thus, "[i]n considering recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation."[14] A rational trier of fact could have found clear and convincing evidence that appellant's misconduct, the cause of the children's deprivation, was likely to continue or would not likely be remedied.
Judgment affirmed.
POPE, P.J., and SMITH, P.J., concur.
NOTES
[1] N.H. has since reached the age of majority.
[2] (Footnote and punctuation omitted.) In the Interest of A.M.L., 242 Ga.App. 121, 122(1), 527 S.E.2d 614 (2000).
[3] (Citations omitted.) In the Interest of C.M., 236 Ga.App. 874, 877(2), 513 S.E.2d 773 (1999).
[4] Id.
[5] Id.; see A.M.L., supra, 242 Ga.App. at 123(1)(c), 527 S.E.2d 614.
[6] See OCGA § 15-11-81(b)(4)(B)(iv).
[7] See OCGA § 15-11-81(b)(4)(B)(iii).
[8] See OCGA § 15-11-81(b)(4)(B)(ii).
[9] See OCGA § 15-11-81(b)(4)(C)(iii).
[10] See also OCGA § 15-11-81(b)(4)(C)(i).
[11] A.M.L., supra, 242 Ga.App. at 123(1)(c), 527 S.E.2d at 614.
[12] Id. at 124(1)(c), 527 S.E.2d at 616.
[13] See, e.g., In the Interest of K.D.S., 237 Ga.App. 865-867(1)(b), (c), 517 S.E.2d 102 (1999) (completing parenting class after filing of termination petition may be discounted, for "[n]ew compliance efforts after the filing of the termination petition are of questionable significance. [Cit.]").
[14] (Footnote omitted.) A.M.L., supra, 242 Ga. App. at 124(1)(c), 527 S.E.2d at 614.