605 S.E.2d 394 (2004)
269 Ga. App. 753
In the Interest of D.E., a child.
No. A04A0965.
Court of Appeals of Georgia.
September 28, 2004.
Joan E. Risher, McDonough, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Laura W. Hyman, Assistant Attorney General, Crumbley & Crumbley, Jason T. Harper, for appellee.
JOHNSON, Presiding Judge.
The Henry County Juvenile Court terminated the parental rights of the mother and father of minor child D.E. The mother appeals from the termination order. She argues that there is insufficient evidence to support the juvenile court's finding that the cause of the child's deprivation is likely to continue and that a plan designed to reunite her with the child did not meet statutory requirements. The arguments are without *395 merit, and we therefore affirm the juvenile court order.
Viewed in the light most favorable to the juvenile court's disposition,[1] the evidence presented at the termination hearing shows that the mother dropped out of school when she was in tenth grade because she was pregnant. She and the child's father were not married, but were living together when D.E. was born on February 4, 1998. Two weeks later, the father was incarcerated on charges that he had shot an undercover police officer from whom he had attempted to buy illegal drugs. The father was convicted of aggravated assault and attempting to purchase drugs, and was given a ten-year sentence which he was still serving in prison at the time of the termination hearing.
In August 1999, the Department of Family and Children Services became involved with the mother and the then 18-month-old child because of the mother's substance abuse and unstable living conditions. Over the next several months, the mother continued to test positive for drugs and was unable to provide a stable environment for D.E. She was convicted of driving under the influence of alcohol and underage drinking, and was placed on probation. In November 2000, she was arrested on a charge of domestic violence involving the man who is now her husband. That charge was dismissed, but she was found to have violated her DUI probation and was not released from jail until January 2001.
On January 10, 2001, the juvenile court granted physical custody of D.E. to the maternal grandmother pending an adjudicatory hearing. That hearing was held on January 23, 2001, and at it the mother stipulated that her instability was the cause of D.E.'s deprivation. The juvenile court subsequently entered an order finding D.E. to be deprived and awarding temporary legal custody of the child to the Department.
On February 23, 2001, the Department implemented a six-goal plan to reunite the mother with her child. The plan required the mother to (1) cooperate and maintain contact with the Department by monthly telephone calls to or office visits with her caseworker, and by informing her caseworker of any address or employment changes; (2) maintain contact with D.E. by weekly supervised visits at the maternal grandmother's home; (3) establish a stable living environment by maintaining a safe and sanitary house for at least six months, and also to provide monthly proof of payment of utilities and rent to the Department for at least six months; (4) use age appropriate parenting skills and complete parenting classes; (5) become financially stable and provide support for D.E. by maintaining employment for at least six months, also to provide her caseworker with pay stubs each month, and cooperate with child support enforcement; (6) remain alcohol and drug free, including participation and cooperation in random alcohol and drug screens.
The mother repeatedly failed to comply with the reunification plan. The Department then submitted a nonreunification case plan, and in January 2002, that plan was approved by the juvenile court. On March 21, 2002, the juvenile court held a hearing to consider extending the Department's custody of D.E., and at the hearing the mother stipulated to her child's continued deprivation based on her drug abuse and inability to meet the reunification plan goals.
The Department subsequently filed its petition to terminate the parental rights of both the mother and father. At the termination hearing, the Department's case manager testified about the mother's failure to meet any of the reunification plan goals. According to the case manager, the mother did not cooperate, and for months at a time neglected to maintain contact with the Department; she also did not maintain contact with D.E., attending only nineteen of seventy-four scheduled visits; she did not provide proof of a stable home and failed to inform the Department of her current address; she failed to complete the required parenting classes, attending only seven of fifteen scheduled classes; the mother did report having a job at an inn from February 2002 to June 2002, but she never provided the Department with pay stubs or other verification of employment; *396 she never paid any child support; and she failed to attend a recommended outpatient drug treatment program, and missed five of seven drug screen appointments.
The mother claimed that she had failed to comply with some of the reunification plan requirements due to lack of transportation and her caseworker's failure to return her telephone calls. She also testified that she had been working at a restaurant for the past seven months and prior to that had worked at the inn, although she admitted having not paid any child support. She denied knowing that she was supposed to have attended an outpatient treatment program, but did produce a certificate  dated one month after the termination petition was filed  showing that she had completed a nine-hour substance abuse education class.
At the conclusion of all the testimony, D.E.'s guardian ad litem recommended termination of both the mother's and father's parental rights. Approximately two months after the hearing, on January 24, 2003, the juvenile court entered its order terminating the parental rights of both the mother and father.
1. In considering the termination of parental rights, the juvenile court must first determine whether there is clear and convincing evidence of parental misconduct or inability.[2] The court determines parental misconduct or inability by finding that the child is deprived, that the lack of proper parental care or control is the cause of the child's deprivation, that such cause of the deprivation is likely to continue, and that the continued deprivation is likely to cause serious harm to the child.[3] If there is clear and convincing evidence of parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest of the child.[4]
The mother does not challenge the juvenile court's findings that D.E. is deprived and that the lack of proper parental care or control is the cause of that deprivation. Instead, she challenges only the sufficiency of the evidence supporting the finding that the cause of the deprivation is likely to continue, claiming the evidence shows that she has been employed and lived at the same address for seven months.
Evidence of past parental conduct which resulted in deprivation may be considered in determining whether the deprivation is likely to continue and cause harm to the child.[5] In determining whether the deprivation of D.E. is likely to continue, the juvenile court here properly considered evidence that the mother has a lengthy history of drug and alcohol abuse, including a DUI offense; that since at least 1999 she has been unable to provide a stable living environment for D.E.; that she has previously stipulated that her instability is the cause of D.E.'s deprivation; and that she completely failed to comply with the terms of the reunification plan.
While the mother's claims of recent employment and steadier living conditions are relevant, they do not require a finding that her history of misconduct and inability will now cease. "In considering recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation."[6] A trial court may find that a parent's conduct over the years is a better predictor of future conduct than a few months of stability.[7] Thus, in spite of the mother's recent conduct, the juvenile court was authorized to find clear and convincing evidence that the lack of proper parental care or control which has caused the child's deprivation is likely to continue.[8]
*397 2. The mother argues that the reunification plan was so vague that it did not comply with OCGA § 15-11-58(c)(3), which provides that such a plan shall contain a clear description of the specific actions to be taken by the parent and the specific services to be provided by the Department. The mother, however, did not raise this argument in the juvenile court, and she therefore may not raise it for the first time on appeal.[9] Moreover, even if the argument were properly before us, it is without merit since a review of the plan reveals that it was not vague, and instead clearly described the specific actions to be taken by the mother and the services to be provided by the Department.
Judgment affirmed.
SMITH, C.J., and PHIPPS, J., concur.
NOTES
[1] In the Interest of M.H.S., 261 Ga.App. 686, 583 S.E.2d 471 (2003).
[2] OCGA § 15-11-94(a).
[3] OCGA § 15-11-94(b)(4)(A)(i)-(iv).
[4] OCGA § 15-11-94(a).
[5] In the Interest of L.S.D., 243 Ga.App. 626, 627, 534 S.E.2d 109 (2000).
[6] (Footnote omitted.) In the Interest of A.M.L., 242 Ga.App. 121, 124(1)(c), 527 S.E.2d 614 (2000).
[7] In the Interest of L.S.D., supra at 628, 534 S.E.2d 109.
[8] See In the Interest of D.N.M., 235 Ga.App. 712, 713, 510 S.E.2d 366 (1998).
[9] See In the Interest of K.A.C., 229 Ga.App. 254, 255(2), 493 S.E.2d 645 (1997).