**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**April 24, 2026**

# In the Court of Appeals of Georgia

A26A0324. IN THE INTEREST OF A. A., a child.

McFADDEN, Presiding Judge.

The mother of A. A. appeals the order awarding the permanent guardianship of A. A. to his paternal grandmother. The mother has not shown reversible error. So we affirm.

1. *Background*

In reviewing the juvenile court's findings that support a guardianship order, we construe

> the evidence in favor of the judgment and determine[ ] whether a rational trier of fact could have found clear and convincing evidence that reunification services should not be provided. We neither weigh the evidence nor determine the credibility of witnesses; we defer to the

juvenile court's factfinding and affirm unless the appellate standard is not met.

*In the Interest of K. G.*, 343 Ga. App. 345, 347(2)(b) (807 SE2d 70) (2017) (citation modified).

So viewed, the record shows that in February 2023, the Paulding County Division of Family and Children Services initiated dependency proceedings concerning then four-month-old A. A. and his five-year-old half sister, M. S. The juvenile court adjudicated the children dependent and placed them in the custody of A. A.'s paternal grandparents.

In August 2023, the division filed a petition to make the paternal grandmother A. A.'s permanent guardian. The juvenile court scheduled a hearing on the petition for permanent guardianship (as well as on a petition for legitimation of M. S., A. A.'s half sister) for April 15, 2024.

Prior to the hearing, the mother, the father of A. A., the father of M. S., the grandmother who was the temporary guardian and proposed permanent guardian, the guardian ad litem, and the parties' counsel met to discuss the case. When the hearing convened, the attorney for the division announced to the court that they had reached

a resolution for both children. She announced that they had agreed that M. S. would remain with the grandmother until the end of the school year, at which time custody would be returned to the mother. She announced that the parties agreed that the grandmother would have permanent guardianship of A. A. and that the parents would have visitation; would be informed of his medical appointments; and would have access to A. A.'s medical records.

The attorneys for the parents of A. A. confirmed that they agreed with those terms. The guardian ad litem stated that she was "in full agreement" with the permanent guardianship as to A. A. But she had concerns regarding M. S., because she thought the grandmother might not feel comfortable with "transitional visits" until the end of the school year.

The court swore in the grandmother to ask about her concerns. She gave sometimes conflicting testimony. She testified that she was willing to have guardianship of M. S., but that she was not willing to keep M. S. until the end of the school year. She testified that she was concerned that the parents did not have a car since A. A.'s father's source of income was driving for Uber. Contrary to her prior

testimony, the grandmother testified that she was willing to keep M. S. until the school year ended, so as not to disrupt her education, but she was "just not willing to take the parents' responsibility."

The attorney for M. S.'s putative father then questioned the grandmother about her testimony that the parents had "lost their car three times since December." The attorney for the mother objected on the ground that the testimony was not relevant. The court overruled the objection.

The attorney for the mother expressed her concern, since the parties already had reached a resolution. She said:

> Well, Your Honor, I'm asking for a continuance. This is not how — like I said, we pre-tried all of this and I think we've gone — I have not — without knowing that this was something that now the [c]ourt is going to consider, to derail a whole plan we had, I'm asking for a continuance to be able to consult with my client more about this, if we're going to go down this long line of testimony for Your Honor to then potentially deny return to custody of M. [S.]

The court responded that he would allow the attorney for the putative father to complete her questioning, and then he would consider a continuance.

After the attorney for M. S.'s father completed her questioning of the grandmother, the attorney for the mother voiced her concerns about the grandmother seemingly changing her position from the agreed upon plan. The court responded that he would allow the attorneys to consult with their clients. The attorney for the mother then asked that both children be returned to the mother immediately and the cases be closed. The court paused the proceedings for the attorney to speak with her client.

When the proceedings resumed, the mother's attorney again requested that the children be returned to the mother that day. She proposed alternatively that the guardian ad litem's "dual role" be bifurcated so that one guardian ad litem could represent the children' best interests and another could represent the children's expressed wishes. She also stated that the original agreement — for a permanent guardianship for A. A. and a return of M. S.'s custody to the mother once the school year ended — was "still a viable plan."

The court noted that the guardian ad litem had a potential conflict because her recommendation differed from M. S.'s stated desire to be with her mother. He decided that the current guardian ad litem would be a "stated interest attorney"; that he would appoint separate guardians ad litem for the children; and that he would

5

continue the hearing for a month. The attorney for the mother did not object to the continuance, and, indeed, said "that's fine" when the court proposed a time.

The court asked the mother's attorney whether she was still asking for the children to be returned to the mother that day, and the attorney responded that "yeah, I'm asking for M. [S.] to go home today." She did not reiterate her request that A. A. be returned to the mother. The court ruled that pending the next hearing, the children would remain with the grandmother and that the plan would be for M. S. to return to her mother.

On July 16, 2024, the juvenile court entered an order "nunc pro tunc to April 15, 2024," continuing the hearing and denying the mother's request for the immediate return of custody of both children.

The court convened a "permanent guardianship permanency hearing" on May 22, 2024. The division asked that the petition for permanent guardianship of M. S. be dismissed and that the court award the grandmother the permanent guardianship of A. A. The mother testified that she did not consent to the paternal grandmother being made A. A.'s permanent guardian; the father consented.

On July 26, 2024, the juvenile court entered an order "nunc pro tunc to May 22, 2024," dismissing the petition as to M. S. and awarding the permanent guardianship of A. A. to his paternal grandmother. The mother filed a timely notice of appeal, challenging the permanent guardianship.

2. *Permanency planning*

The mother argues that the juvenile court erred by granting the division's petition for permanent guardianship "without ensuring statutory compliance relating to permanency planning." She has not shown reversible error.

The mother argues that the record does not include permanency plan documents or reflect that a permanency plan hearing was timely conducted. But she did not raise this objection in the guardianship proceedings in the juvenile court. Indeed, when the juvenile court asked her attorney whether she "want[ed] to say anything else" about the permanency plan report (which apparently had been prepared but was not filed in the guardianship proceeding), she responded, "Not about that. Just closing." So the mother has not preserved this argument for appeal. *In the Interest of D. E.*, 269 Ga. App. 753, 756(2) (605 SE2d 394) (2004).

In her reply brief, she argues that we should review her enumeration for plain error under OCGA § 24-1-103(d). That statute, however, requires plain error review of trial court rulings on the admission or exclusion of evidence. See *Keller v. State*, 308 Ga. 492, 497(2)(a) (842 SE2d 22) (2020) (plain error review is limited to specific categories of alleged errors). But the mother is not challenging a juvenile court ruling admitting or excluding evidence.

Most importantly, we reject the mother's argument that any failure to include a permanency plan in the guardianship proceeding deprived her of notice that the division was pursuing a permanent guardianship.[1] The division filed a petition for permanent guardianship that was served on the mother. See OCGA § 15-11-241. At the April 15 hearing that was continued for the appointment of additional guardians ad litem and because of uncertainty regarding the guardianship of M. S., the attorney for the mother confirmed that a permanent guardianship for A. A. and M. S. returning to her mother's custody was "still a viable plan." And at the permanent guardianship

---

[1] We note that the guardianship proceeding is separate from the dependency proceeding, with a separate complaint and a separate case number. And the mother did not request the dependency proceedings to be included in the record on appeal. So it is not clear whether any permanency plan report was filed in the dependency proceedings, where they are statutorily required. OCGA § 15-11-231.

hearing, the mother testified that she understood that the division had filed a petition to make the paternal grandmother A. A.'s permanent guardian.

3. *Juvenile court's analysis*

The mother argues that the juvenile court applied "the incorrect standard of review and standards of law" when considering the guardianship petition. She has not shown reversible error.

(a) *Reunification*

She argues that clear and convincing evidence did not support the trial court's conclusion that reasonable efforts to reunify A. A. with his mother would be detrimental to him, as OCGA § 15-11-240(a)(1) required before the entry of the order of permanent guardianship. On this issue, the court concluded that:

> reasonable efforts to reunify the [c]hild with the parents would be detrimental to the [c]hild, as the [c]hild has lived with [the grandmother-guardian] for the entirety of his life. The parents returned the [c]hild to [the guardian], cutting one visit to just a few hours, due to the [c]hild's inconsolable crying. [The guardian] is able to meet the [c]hild's elevated medical needs. The [f]ather consents to the guardianship and the [m]other's circumstances remain unchanged. The parents do not have stable housing or income. They did not complete treatment as recommended by their substance abuse evaluations. The [m]other is not

9

in treatment for her mental health or taking any medication to address her mental health. The dependency of the [c]hild is unresolved. The parents have not visited the [c]hild consistently in more than six months.

Viewed in favor of the judgment, *In the Interest of K. G.*, 343 Ga. App. at 347(2)(b), the evidence supports the juvenile court's findings.

(b) *Child's best interests*

The mother also argues that evidence did not support the trial court's finding that "the appointment of a permanent guardian for such child is in the best interests of such child," and that the proposed guardian was the individual most appropriate to be his guardian as OCGA § 15-11-240(a)(4) required before the entry of the order of permanent guardianship. She argues only that no documentary or testimonial evidence from an expert or professional therapist was introduced to establish that A. A. would be better off with the proposed guardian. But she cites no authority, and we have found none, that requires evidence from an expert or a professional therapist to support such a finding.

(d) *Child's wishes*

The mother argues that the court erred by failing to take into account A. A.'s wishes in violation of OCGA § 15-11-103(a). That statute, however, provides that a child in a dependency proceeding has the right to be represented by an attorney. It does not require a juvenile court to consider the child's wishes in guardianship proceedings. (And, of course, A. A. was only 18-months old at the time of the final hearing on permanent guardianship.)

(d) *Lack of specificity*

The mother argues that the juvenile court's order fails to provide sufficient detail and specificity. But she has not shown error in this regard. The juvenile court found facts based on the testimony of the witnesses. He made conclusions of law, and applied the facts to the applicable law, OCGA § 15-11-240, to make his decision to grant the petition for the appointment of a permanent guardian for A. A.

(e) *Standard for guardianship*

The mother argues that the juvenile court applied the wrong standard because he considered the factors articulated in *Clark v. Wade*, 273 Ga. 587 (544 SE2d 99) (2001), a case that involved a custody dispute between a noncustodial father and the maternal grandparents under OCGA § 19-7-1(b.1), not a guardianship proceeding

brought by the division under OCGA § 15-11-240. The court did not err in relying on

*Clark.* That reliance was limited to the question whether the division had met its

burden of rebutting the presumption of parental custody. See *In the Interest of M. F.*,

298 Ga. 138, 144-145(2) (780 SE2d 291) (2015) (citing *Clark* and noting that

presumption of parental custody applies in the context of a petition to modify

guardianship under OCGA § 15-11-244). The court also applied the factors set out in

OCGA § 15-11-240, the statute that grants juvenile courts authority to appoint

permanent guardians for dependent children.

3. *April 15 hearing*

The mother enumerates error regarding the April 15 hearing.[2] She argues that

the trial court erred when it denied her motion for a return of custody at the hearing

and when it instantly denied her request for a continuance of the April 15 hearing.

---

[2] We reject the division's argument that we lack jurisdiction to consider this enumeration of error because the mother's notice of appeal referenced only the final order. "[A]n appellant need only include in the notice of appeal the single judgment that entitles the appellant to take an appeal, and an appellate court must review other orders raised on appeal that may affect the proceedings below regardless of whether or not those orders are expressly included in the notice of appeal." *Mateen v. Dicus*, 281 Ga. 455, 456 (637 SE2d 377) (2006). See also OCGA § 5-6-34(d); *In the Interest of S. W.*, 363 Ga. App. 666, 669(1) (872 SE2d 316) (2022).

(a) *Denial of motion for return of custody*

Specifically, the mother argues that the juvenile court applied the wrong standard when denying her oral motion for the return of custody at the April 15 hearing. She argues that OCGA § 15-11-134(b) required the court to determine whether the return of custody would be contrary to the child's welfare. That statute provides, "Any order continuing a child's placement outside of the physical custody of his or her parent, guardian, or legal custodian shall be based on a finding by the court that return of such child to such custody would be contrary to his or her welfare." OCGA § 15-11-134(b).

Pointing to the trial court's order memorializing the events of the April 15 hearing and continuing the hearing to the next month, she argues that the juvenile court incorrectly applied a best interests standard. He did not. The court simply held that the request for return of custody was denied. He mentioned "best interests" only with respect to the continuance, holding that it was "not contrary to the children's best interests as the children are placed with family and the continuance is one month away."

We hold that the mother's challenge to the denial of her oral motion for return of custody is moot. The order of permanent guardianship "entered by the juvenile court superseded the [continuance order that included a denial of the motion for return of custody], effectively mooting . . . the issue[ ] the [mother] raise[s] regarding the validity of the [denial of her motion]." *Beavers v. Provost*, 304 Ga. 841, 842-43 (822 SE2d 257) (2018) (footnote omitted) (challenge to dependency removal order that granted the division custody of dependent children was mooted by later entry of order of adjudication and disposition that continued custody in the division). See also *In the Interest of H. J.*, 377 Ga. App. 557, 562(1) (923 SE2d 189) (2025) (juvenile court's subsequent adjudication of dependency mooted parents' arguments concerning initial removal order); *In the Interest of C. E.*, 366 Ga. App. 612, 617(1) (884 SE2d 22) (2023) (mother's challenges to preliminary protective hearing were mooted by adjudication of dependency); *In the Interest of P. M.*, 201 Ga. App. 100, 100-01 (410 SE2d 201) (1991) (improper emergency order extending custody in the Department of Family and Children Services was mooted by later order extending custody in the department).

(b) *Continuance*

The mother enumerates as error the juvenile court's denial of her request for a continuance of the April 15 hearing. She seems to argue that the trial court erred by denying her motion for a continuance early in the hearing and instead ordering a continuance later in the proceeding. She has failed to persuasively articulate how the delay in ordering the continuance harmed her.

*Judgment affirmed. Watkins and Padgett, JJ., concur.*