A03A0349. IN THE INTEREST OF V. I. D. et al., children.

(576 SE2d 297)

PHIPPS, Judge.

The natural mother of two daughters, V. I. D. (born in August 1991) and S. K. D. (born in February 1995), appeals an order of the Juvenile Court of Chatham County terminating her parental rights.

"The decision to terminate parental rights is a two-step process. The juvenile court must first determine whether clear and convincing evidence exists of parental misconduct or inability. If such evi-

dence exists, the court then considers whether termination of the parent's rights is in the best interests of the children. . . . [Cit.]"[1] "Parental misconduct or inability is established upon finding that the child is deprived; that the lack of proper parental care or control is the cause of the deprivation; that the child's deprivation is likely to continue or will not be remedied; and that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. [Cits.]"[2]

> In determining lack of parental care or control, a court shall consider, among other things, (i) a medically verifiable deficiency of the parent's mental or emotional health that renders the parent unable to provide adequately for the child, (ii) chronic unrehabilitated abuse of controlled substances that renders the parent incapable of providing adequately for the child, and (iii) felony convictions resulting in imprisonment that has a demonstrable negative effect on the quality of the parent-child relationship.[3]

In this case, prior unappealed deprivation orders establish the children's deprived status;[4] and appellant concedes that lack of proper parental care or control is the cause of the children's deprivation and that continued deprivation would likely cause them serious harm. Appellant challenges the sufficiency of the evidence to support a finding that the children's deprivation is likely to continue or will not be remedied. In resolving this challenge, we review the evidence in a light most favorable to the juvenile court's decision to determine whether any rational trier of fact could have found by clear and convincing evidence that the mother's right to custody should be terminated.[5] We neither weigh evidence nor determine the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.[6] Because the standard has been met, we affirm.

The record shows that in January 1998 the juvenile court heard evidence and determined that V. I. D. and S. K. D. were deprived because of their parents' instability and substance abuse. The parents were addicted to prescription drugs, the older daughter had not been enrolled in school, and the family had been living in a U-Haul

---

[1] *In the Interest of D. W. A.*, 253 Ga. App. 346 (559 SE2d 100) (2002).

[2] *In the Interest of C. N. S.*, 248 Ga. App. 84, 85 (545 SE2d 633) (2001).

[3] (Footnote omitted.) *In the Interest of J. M.*, 251 Ga. App. 380, 381-382 (2) (554 SE2d 533) (2001).

[4] See, e.g., *In the Interest of L. S. M.*, 236 Ga. App. 537, 538 (512 SE2d 397) (1999).

[5] See, e.g., *In the Interest of C. L. R.*, 232 Ga. App. 134 (1) (501 SE2d 296) (1998).

[6] Id.

truck which the parents acquired through criminal means. After the parents' arrest, they separated and began living in households into which the children could not move. As a result of the U-Haul truck incident, the mother was convicted of a felony. Consequently, the children were placed into the custody of the Department of Family and Children Services (DFACS), and a long history of custodial oversight thus began.

The record reflects case plans for returning the children to their parents, beginning in January 1998. Review hearings were held in October 1998 and November 1998, and, although the parents had largely met the goals of reunification, the children were not returned to them because the father had a history of sexually molesting another child, and the mother had reconciled with the father and refused to live apart from him. A revised reunification plan for therapy and supervised visitation was ordered in November 1998. A review hearing in May 1999 found that the mother had allowed their father unsupervised contact with the children in violation of the court's order and resulted in continuing custody of the children by DFACS. At another review hearing in June 1999 the court found that the parents had complied with the reunification plan and that the children could be returned, conditionally, to their parents within the next month. But, although the children were returned home in August 1999, after a hearing in November 1999 the court found the parents in violation of its conditions (they had engaged in domestic violence in the presence of the children, the father had been abusing alcohol, and the children had been left alone with their father). In addition, the mother was again facing criminal charges. The children were found to be deprived and were returned to the custody of DFACS. Although the family's DFACS case manager recommended that the children not be reunified with either parent, the court continued to order a plan for reunification of the children with their mother.

In April 2000 the court again reviewed the children's circumstances, ordering continued custody by DFACS and psychological therapy for the children. Reunification of the children with the mother was authorized. In May 2000 the children were returned to their mother, but three months later a DFACS caseworker found "her residence to be in shambles and her life chaotic" and her children "out of control and running the house." In-home parenting counseling was provided and therapy was begun for the children and their mother. The counselor found the mother unable to provide adequate parenting to the children without supervision.

In October 2000 the mother was arrested for shoplifting while her daughters were with her. She was taken to jail and the children were returned to DFACS custody. The DFACS case manager contin-

ued to recommend that the children not be reunified with their mother. But, at another review hearing in April 2001, the court once again outlined a reunification plan for the mother, setting conditions for psychological and stress evaluations. At a review hearing in June 2001 the court found, based on testimony of the evaluating psychiatrist, that the mother was not prepared to parent children because of panic attacks, inability to handle stress, difficulty in managing a household and supervising children, and an obsessive-compulsive disorder. The children were continued in the custody of DFACS.

In June 2002, after conducting hearings, the court found that the mother remained unstable and unable to cope with stress. She had not been able to maintain employment. And she had begun to use alcohol in violation of previous court orders, even though alcohol consumption interfered with the effectiveness of various psychotropic medications on which she depended. A psychologist who had evaluated the mother concluded that chronic problems with her physical health, combined with her psychological disorders, rendered her unable "to do the day-to-day kind of parenting and housekeeping that's necessary." The testimony of DFACS workers authorized the court to find that the mother maintained her home in a condition unsafe and unsuitable for children. A psychologist who had been treating the mother for about six months acknowledged that she was not then capable of taking care of her children, although the psychologist thought that the mother would be ready to resume child custody in about six months. Although the mother was under psychiatric treatment at the time of the hearings below, her psychiatrist did not testify. The children had been in foster care during 46 of the previous 55 months.

The juvenile court found that the children were deprived, that the cause of their deprivation was their parents' failure to provide proper parental care, and that the deprivation was likely to continue and to cause harm to the children. The parental rights of both parents were terminated. Under the circumstances, the court was authorized to place more weight on "negative past facts" than "positive promises" or projections as to the future,[7] and to find that, in view of the mother's past conduct, her children's deprivation was likely to continue.[8]

*Judgment affirmed. Blackburn, C. J., and Ellington, J., concur.*

DECIDED DECEMBER 20, 2002.

---

[7] See, e.g., *In the Interest of N. M. H.*, 252 Ga. App. 353, 357 (556 SE2d 454) (2001).

[8] See, e.g., *In the Interest of B. W.*, 254 Ga. App. 63, 64 (1) (561 SE2d 199) (2002).

*Mark J. Nathan,* for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Beckmann & Lewis, Leo G. Beckmann, Jr.,* for appellee.