A03A0037. IN THE INTEREST OF M. H. S., a child.

(583 SE2d 471)

BARNES, Judge.

Appellant, the biological and putative father of M. H. S., appeals from the judgment of the juvenile court terminating his parental rights in M. H. S. and denying his motion for new trial. He enumerates as error the sufficiency of the evidence to support the court's finding of clear and convincing evidence to support the termination of his parental rights. We find that the evidence supported the decision to terminate his parental rights to M. H. S. and affirm.

> The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the juvenile court's disposition, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.

(Citations and punctuation omitted.) *In the Interest of K. S. W.*, 233 Ga. App. 144, 147 (1) (503 SE2d 376) (1998).

So viewed, the evidence demonstrates that appellant and his wife divorced on February 1, 2000, and the ex-wife retained physical and legal custody of their eight-year-old son M. H. S. The ex-wife testified that she and the appellant separated in 1999 as a result of his drinking and verbal and physical altercations between the couple. During the separation and after the divorce, the appellant maintained contact with M. H. S., but the ex-wife testified that his behavior became increasingly erratic. She testified that they were going to therapy together to benefit M. H. S. and that although the appellant was taking antidepressants, he still experienced extreme mood swings. She testified that shortly after the divorce she had a strange conversation with the appellant about visitation with M. H. S. and appellant suggested that he would no longer be seeing the child.

Soon after that conversation, on February 17, the appellant vis-

ited a real estate sales office under the guise of house hunting. When appellant and a female agent went to view one of the vacant houses, appellant pulled a gun on the agent, bound her feet and hands, and raped her. The victim escaped, and when the police went to the crime scene, they discovered a threatening note directed to the appellant's ex-wife. The police were concerned for her safety so she agreed to have someone around her and her children at all times. The appellant had fled in the victim's car, and police tracked him via his cellular telephone to Arizona, where he had admitted himself to a hospital for psychiatric observation. He was transported back to Georgia and during his incarceration staged two highly publicized hunger strikes. He subsequently pled guilty to rape, kidnapping, armed robbery, sexual battery, and possession of a firearm during the commission of a felony and was sentenced to serve 20 years. He is ineligible for parole and is scheduled for release in 2020. Appellant had paid court-ordered child support of $400 a month until his arrest. On May 30, 2001, appellant's ex-wife filed a petition to terminate appellant's parental rights in M. H. S. The trial court conducted a hearing, made findings of fact, and terminated the appellant's parental rights.

Pursuant to OCGA § 15-11-94, the decision to terminate parental rights is a two-step process. First, the court determines whether there is clear and convincing evidence of parental misconduct or inability. Next, if the court finds clear and convincing evidence of parental misconduct or inability, the court then considers whether termination of parental rights is in the best interest of the child. *In the Interest of D. I. W.*, 215 Ga. App. 644, 645 (1) (451 SE2d 804) (1994).

> Parental misconduct is determined by finding: 1) the child is deprived; 2) lack of proper parental care or control is the cause of the deprivation; 3) such deprivation is likely to continue or will not be remedied; [and] 4) continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child. [OCGA § 15-11-94 (b) (4) (A) (i)-(iv)].

(Citations and punctuation omitted.) *In the Interest of A. M. V.*, 222 Ga. App. 528, 529 (474 SE2d 723) (1996). Deprivation is established by showing parental unfitness upon "either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. [Cits.]" *In re D. H.*, 178 Ga. App. 119, 124 (342 SE2d 367) (1986). Further, "in determining whether a child is without proper parental care and control, [OCGA § 15-11-94 (b) (4) (B) (iii)] provides the court *shall* consider, 'without being limited' thereto, the convic-

tion and imprisonment of a parent for a felony offense which has a demonstrable negative effect on the quality of the parent-child relationship." (Citation and punctuation omitted.) *In the Interest of L. F.,* 203 Ga. App. 522 (417 SE2d 344) (1992). This "demonstrable negative effect" can be shown by circumstantial as well as by direct evidence. Id.

Because M. H. S. was not in the custody of his father, in determining whether he was without proper parental care or control, the juvenile court can also consider

> whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) [t]o develop and maintain a parental bond with [M. H. S.] in a meaningful, supportive manner; [and] (ii) [t]o provide for the care and support of [M. H. S.] as required by law or judicial decree.

OCGA § 15-11-94 (b) (4) (C) (i), (ii).

"Compelling facts are required to terminate parental rights. . . . Evidence of *past* unfitness, standing alone, is not enough; clear and convincing evidence of *present* unfitness is required." (Emphasis in original.) *In the Interest of H. L. T.,* 164 Ga. App. 517, 519-520 (298 SE2d 33) (1982). In this case, compelling facts support the trial court finding M. H. S. deprived, including: the appellant's confession to the rape and attendant crimes, the premeditated nature of the crimes, the threatening note directed to the child's mother, the appellant's parent's cooperation in appellant's attempt to flee, high publicity surrounding the crimes and appellant's hunger strikes in the community where M. H. S. lives, and the fact that the child will be 27 years old before appellant is eligible for release. The trial court also noted numerous aggravating factors, including appellant's failure to pay court-ordered child support since his arrest, his voluntary use of monetary assets for purposes other than support of the child, a psychologist's testimony that M. H. S. is afraid of his father and afraid that his father will attempt to take him away from his mother, psychologist testimony that M. H. S. suffers stress-related maladies following visits with his father at the prison, and the importance of a same sex parent to M. H. S.'s development.

We note that there is evidence that the appellant tried to maintain a relationship with M. H. S. by writing letters and sending cards to him, but the appellant testified that he had been directed by a victim's advocacy group to stop. It also appears that the appellant is a loving father and wants to be involved in the life of his son. The guardian ad litem, however, represented that it would be in the best

interest of the child to have a "clean slate" and noted that any bond between the appellant and M. H. S. would not be "meaningful or supportive" given the appellant's incarceration. He also noted that the appellant did not appear to have any desire to financially support the child. The psychologist treating M. H. S. testified that although the appellant has a good relationship with his son, he was concerned about the stressful impact the appellant's incarceration was having on M. H. S. He testified that although written contact between the appellant and his son would be fine, he believed that there was a high risk of emotional damage from any physical contact through visitation at the prison. He also testified that he felt very comfortable with M. H. S.'s present home life with his mother and stepfather. Considering these circumstances, the juvenile court did not err in finding sufficient evidence of the appellant's parental misconduct and inability.

The court's conclusion that termination of parental rights is in the best interest of the child is also supported by clear and convincing evidence. OCGA § 15-11-94 (a). "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citation and punctuation omitted.) *In the Interest of C. N. H.*, 238 Ga. App. 50, 53-54 (2) (517 SE2d 589) (1999). Further, "[i]n determining that terminating the [father's] parental rights would serve the best interest[ ] of the [child], the court properly concerned itself with the need for stability in [M. H. S.'s life]." *In the Interest of R. N.*, 224 Ga. App. 202, 205 (2) (480 SE2d 243) (1997).

The trial court noted that the mother has remarried and the child has a close bond with his stepfather and M. H. S. has expressed the desire to have his stepfather adopt him and to have his surname changed to that of his stepfather. The stepfather has also expressed the desire to adopt the child. Thus, the evidence supports the determination that termination of appellant's parental rights is in the best interest of the child.

> This court has long recognized that termination of parental rights is a severe measure. There is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously. When we do this, we make a decision on human frailties and their consequences. It becomes an agonizing undertaking.

(Citations and punctuation omitted.) *In the Interest of J. A. B.*, 189 Ga. App. 79 (374 SE2d 839) (1988). While incarceration alone need

not always require the termination of parental rights, incarceration will support such a ruling given sufficient aggravating circumstances. *In the Interest of L. F.*, supra, 203 Ga. App. at 522. That being so, upon reviewing the evidence in the light most favorable to the factfinder, any rational trier of fact could find by clear and convincing evidence that the appellant's parental rights were properly forfeited.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED MAY 29, 2003 —
RECONSIDERATION DENIED JUNE 17, 2003.

*Lamalua, Read & Oeland, Paul J. Oeland IV*, for appellant.
*John C. Leggett*, for appellee.