A03A0140. IN THE INTEREST OF D. B. P. et al., children.
(584 SE2d 256)

RUFFIN, Presiding Judge.

The natural mother of K. P. and D. B. P. appeals an order of the juvenile court terminating her parental rights following a hearing.[1] She challenges the sufficiency of the evidence supporting the termination. The mother also contends the trial court failed to make specific factual findings in its termination order, requiring reversal. Finding no error, we affirm.

On appeal from an order terminating parental rights, we view the evidence in the light most favorable to the juvenile court's ruling and determine whether:

> any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.[2]

---

[1] The juvenile court also terminated the rights of the children's putative fathers. The putative fathers did not appeal the court's termination order, and therefore, we address only the mother's rights.

[2] *In the Interest of J. J.*, 259 Ga. App. 159-160 (575 SE2d 921) (2003).

So viewed, the evidence shows that on January 8, 2001, the mother, while under the influence of drugs, was involved in an automobile accident. That same day, the Union County Department of Family and Children Services (hereinafter "DFCS") obtained emergency custody of ten-year-old K. P. and two-year-old D. B. P. At the time DFCS assumed custody of the children, the following conditions existed in the home: the mother abused prescription drugs; the children had lived with the mother and various male companions or relatives at a number of different locations; D. B. P.'s putative father abused the mother in front of the children; to the extent that she could, K. P. was forced to take on parental responsibilities for D. B. P.; and K. P. had attended numerous schools during the course of the second grade. In addition, the mother sometimes forgot to meet K. P. after school, leaving K. P. locked out of the house for considerable lengths of time.

On February 21, 2001, the juvenile court entered an order finding that the children were deprived and awarding DFCS temporary legal custody. DFCS implemented a reunification plan on March 7, 2001, which the juvenile court adopted by supplemental order. The plan required the mother to have no further contact with D. B. P.'s putative father; remain free of alcohol and drugs except as prescribed by her physician; support her children financially; visit her children regularly; obtain and maintain suitable housing and employment; obtain medical care for hepatitis C; submit to a psychological evaluation and receive counseling; prepare a monthly budget; and cooperate with DFCS.

The mother failed to comply with virtually all of the requirements of the reunification plan. She continued to have contact with D. B. P.'s putative father and failed to remain alcohol and drug free. She did not maintain suitable housing or employment sufficient to support her children. Nor did she obtain medical treatment for hepatitis C, despite her poor health. Furthermore, the evidence shows that she did not comply with the case plan's requirements for counseling, maintaining contact with her children, financially supporting her children, or following a monthly budget. On August 16, 2001, the juvenile court held the mother in contempt for failure to comply with the court-ordered reunification plan. Approximately one month later, DFCS concluded that reunifying the children with the mother would not be appropriate and prepared reports detailing that conclusion.

The evidence shows that the mother continued to use drugs in the fall of 2001. On October 9, 2001, she appeared for a court hearing four hours late, exhibiting questionable behavior. Immediately following the hearing, DFCS ordered a drug screen, and the mother tested positive for benzodiazepines, opiates, and amphetamines. The mother asserted that she was taking prescription medications that

would account for the opiates and benzodiazepines, but she failed to provide evidence of those prescriptions and had no explanation for the amphetamines in her system. On December 14, 2001, the court ended reunification services.

On January 22, 2002, DFCS petitioned to terminate the mother's parental rights to K. P. and D. B. P. The juvenile court subsequently held a hearing on the matter. The mother's probation officer testified that, in August 2001, the mother was placed on probation for two traffic offenses. In October 2001, the mother failed a drug test, her probation was revoked, and she spent approximately 30 days in jail. Shortly after her release, she was arrested again for various charges, including forgery and shoplifting. The mother's probation was again revoked, and she spent several months in jail.

The mother also violated her probation by moving to North Carolina without obtaining permission and failing to pay the outstanding balance of her criminal fines. Furthermore, the mother was arrested for obstruction and public drunkenness in late March 2002, resulting once again in a probation revocation. While in jail following that arrest, she tested positive for marijuana. According to the probation officer, the mother failed to comply with nearly every condition of her probation.

Dr. Fussell, the psychologist who evaluated the mother in March 2001, also testified at the hearing. According to Dr. Fussell, the mother suffers from depression, possible panic disorder, alcohol and prescription drug abuse, and personality disorder. He testified that the mother's lack of coping skills would likely result in continued drug use.

In addition, the juvenile court heard the testimony of John Andrews, the children's court-appointed special advocate, who, without reservation, recommended that the mother's parental rights be terminated. The guardian ad litem appointed for the children also recommended termination.

1. Before it can terminate parental rights, a juvenile court must complete a two-step analysis.[3] The first step requires the juvenile court to determine whether "clear and convincing evidence of parental misconduct or inability" exists under OCGA § 15-11-94 (b).[4] If the first inquiry is answered in the affirmative, the juvenile court must then consider whether parental termination serves the best interests of the children.[5] Parental misconduct or inability exists under OCGA § 15-11-94 (b) (4) (A) when: (a) a child is deprived; (b) the lack of proper parental care or control caused the child's deprivation; (c) the

---

[3] See *In the Interest of M. H. S.*, 261 Ga. App. 686 (583 SE2d 471) (2003).
[4] Id. at 687.
[5] See id.; OCGA § 15-11-94 (a).

cause of the deprivation is likely to continue; and (d) the continued deprivation is likely to cause the child serious physical, mental, emotional, or moral harm.[6] We note from the outset that the mother does not challenge the sufficiency of the evidence supporting the first three elements of parental misconduct. Rather, she argues that insufficient evidence supported the juvenile court's finding that continued deprivation will likely result in serious physical, mental, emotional, or moral harm to the children.

In establishing that a lack of proper parental care or control exists, the court shall consider, among other factors: the physical, mental, or emotional health of the parent, and chronic unrehabilitated use of drugs and alcohol.[7] We find the court's careful consideration of these factors supports its finding that the children's continued deprivation is likely to result in serious physical, mental, emotional, or moral harm to the children.

We note that while the children were in DFCS custody, the mother's pattern of unreliability continued. From April 2001 until September 2001, she missed several visits with her children, sometimes failing to show without notice, while her children waited for her. The mother also reported to the DFCS case manager that she continued to live with D. B. P.'s putative father and that he still abused her. Moreover, the mother has continued abusing drugs and has not financially supported her children.

Dr. Fussell, who examined K. P., diagnosed her with attachment disorder and noted that she exhibited signs of extreme anger toward her mother. A second psychologist, Dr. Strickler, found that K. P. had missed a significant portion of her childhood by assuming adult responsibilities. And K. P. testified that she did not want to be returned to her mother because she did not want to live in an unstable environment. When asked why she wanted to come to court to testify, K. P. replied: "[b]ecause I didn't want to live in a place that I didn't think would be good for me and [D. B. P.] I didn't want to go back to my mother. I wanted to make 100 percent sure that I didn't."

The evidence further shows that D. B. P. did not begin talking until he entered foster care and both children have thrived in their foster home. Based on this and other evidence, the juvenile court was authorized to find by clear and convincing evidence that the children's continued deprivation would ultimately result in "serious physical, mental, or moral harm to the children."[8]

---

[6] See OCGA § 15-11-94 (b) (4) (A) (i)-(iv).

[7] See *In the Interest of V. I. D.*, 259 Ga. App. 40, 41 (576 SE2d 297) (2002); OCGA § 15-11-94 (b) (4) (B) (i)-(iii), (v).

[8] *In the Interest of R. A. R.*, 259 Ga. App. 680, 686 (3) (577 SE2d 872) (2003).

2. The mother further contends that the juvenile court erred in finding that termination of her parental rights serves the best interests of her children. Again, we disagree.

The same facts that establish parental misconduct can simultaneously support the juvenile court's determination that parental termination serves the best interests of the children.[9] Given the children's progress in foster care, their mother's inability to manage her life and avoid drugs, and her multiple arrests and probation violations at a time when DFCS was trying to reunify her with her children, the juvenile court was authorized to find that termination of the mother's parental rights serves the best interests of the children.[10]

3. The mother also alleges that the trial court did not support its ruling that the continued deprivation will cause serious physical, emotional, or moral harm to the children with explicit factual findings. This argument is belied by the court's order.

The juvenile court made extensive factual findings supporting the loss of parental rights, citing, among other things, the mother's inability to stay out of jail, her refusal to end her abusive relationship with D. B. P.'s putative father, her failure to maintain stable employment or housing, her refusal to seek treatment for hepatitis C, and her continued drug use. The juvenile court also considered the testimony of Dr. Fussell, who described the mother as a dependent personality who could easily be influenced to use drugs. And it determined that "[t]he past issues of deprivation, ill health, and drug abuse are likely to cause harm to the children if they [are] ever returned to the home of the mother."

Having carefully examined the record, we find that the court's order contained sufficient factual findings supporting its conclusion that the continued deprivation would cause the children serious mental, physical, or moral harm. Accordingly, this claim of error provides no basis for reversal.[11]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED JUNE 26, 2003.

*William O. Tullis, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General,*

---

[9] See *In the Interest of N. Q.*, 260 Ga. App. 118, 122 (2) (578 SE2d 920) (2003).
[10] See *In the Interest of J. J.*, supra at 165-166.
[11] See *In the Interest of C. B.*, 258 Ga. App. 143, 147 (2) (574 SE2d 339) (2002).

*Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Stephanie B. Hope, Robbie E. Colwell*, for appellee.