A01A2164. IN THE INTEREST OF A. G. et al., children.
(558 SE2d 62)

MILLER, Judge.

The mother of A. G. (girl age six), A. G. (boy age ten), and J. G. (boy age fifteen) appeals from the juvenile court's order terminating her parental rights. She contends that there is no clear and convincing evidence of parental misconduct or inability and that the trial court erred in finding that termination was in the best interests of her children.[1] For the following reasons, we affirm.

We recently reiterated the applicable standard of review:

On appeal, we must determine whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather,

---

[1] See OCGA § 15-11-94 (a).

we defer to the trial court's factfinding and affirm unless the appellate standard is not met.[2]

As a result of a petition alleging deprivation, the juvenile court found that the petitioner had established by clear and convincing evidence that the children were deprived and ordered temporary legal custody be given to the Department of Human Resources. The Department established a case reunification plan for the mother. After the mother's noncompliance with the plan, the court found that reunification was no longer appropriate and ordered legal custody to remain in the Department. When the Department filed a petition for termination of parental rights, a hearing was held, resulting in the order of termination currently being appealed. The mother did not appeal any of the court's orders other than this last one.

1. *Parental Misconduct or Inability.* Under the governing statute, the court first considers parental misconduct or inability by determining whether (i) the child is a deprived child; (ii) the lack of proper parental care or control by the parent is the cause of the deprivation; (iii) such cause of deprivation is likely to continue or will not likely be remedied; and (iv) the continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.[3] We address these factors in turn.

(a) *Deprivation.* On February 28, 2000, the trial court found that the children were deprived. The record discloses no appeal from the order embodying this finding. Accordingly, the mother was bound by this finding for purposes of the termination hearing.[4]

(b) *Lack of Proper Parental Care or Control.* The finding just mentioned stated that the children were deprived "in that they are without proper parental care, control, and supervision for their physical, mental and emotional health." Thus, the mother was also bound by this determination on this second factor.[5]

Moreover, testimony showed numerous instances of deprivation caused by lack of parental control. First, the mother neglected these three children and another child.[6] The mother's first child — not one of the three involved here — was placed in foster care in 1982, 1984, and 1987 as a result of the mother's neglect and child molestation by the mother's husband. Testimony also showed that the mother often left the three children in the care of others who were incapable of caring for or were a threat to the children. For example, she sent the six-

---

[2] (Citation omitted.) *In the Interest of A. A.*, 252 Ga. App. 167, 169 (2) (555 SE2d 827) (2001).

[3] OCGA § 15-11-94 (b) (4) (A).

[4] See *In the Interest of R. G.*, 249 Ga. App. 91, 93 (1) (a) (547 SE2d 729) (2001).

[5] Id.

[6] OCGA § 15-11-94 (b) (4) (B) (v).

year-old girl to be cared for in a home inhabited by a known child molester, resulting in the molestation of the child; she often left her children home alone; she once left them in the care of an elderly, mentally disabled woman; and on another occasion she left them in the care of a known alcoholic. She also failed to ensure her first child received needed medication.

Second, the mother had a medically verifiable mental health deficiency that rendered her incapable of providing adequately for the children.[7] Expert testimony showed that she had an IQ of 60 (intellectually deficient range) and that she was mildly retarded and functionally illiterate. She had psychological disorders exhibited by a pattern of motivation in short spurts and poor motivation in the long run. These mental deficiencies led in part to her allowing the children to be cared for by incapable individuals.

Third, the mother had a history of chronic unrehabilitated abuse of alcohol that rendered her incapable of providing adequately for the children.[8] Despite sporadic treatment programs over the years, she would return to abusing alcohol, resulting in her neglecting her children. Her daily use of alcohol and her desire to "go out drinking" with her boyfriend caused her to leave her children alone for substantial periods of time. Her attendance at AA programs was minimal at best. Her failure to receive consistent treatment violated her case reunification plan.

Accordingly, a rational trier of fact could have found clear and convincing evidence that the mother's lack of proper parental care and control caused the children to be deprived.

(c) *Lack of Care or Control Likely to Continue.* "Evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to their parent[ ]."[9] Here the mother's long history of deficiencies in the supervision of her children, along with the other evidence detailed above, authorized the juvenile court's determination that the lack of proper parental care or control is likely to continue. Even though the mother presented evidence that she had reformed, *In the Interest of C. D. P.*[10] explained:

Here, although some improvement in [the mother's] drug addiction and employment status had occurred, that alone does not constitute conclusive evidence of parental fitness in light of the family's history. Judging the credibility of her

---

[7] See OCGA § 15-11-94 (b) (4) (B) (i).

[8] OCGA § 15-11-94 (b) (4) (B) (ii).

[9] (Citation omitted.) *A. A.*, supra, 252 Ga. App. at 172 (2) (c).

[10] 238 Ga. App. 393 (519 SE2d 37) (1999).

good intentions was a task for the juvenile court. The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact. Further, this Court has held that the trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court.[11]

Having reviewed the record, we conclude that the juvenile court was authorized to infer from the evidence of past conduct that the improvements in the mother's situation were not sufficient to justify maintaining the children in foster care limbo in hopes that the mother could achieve stability and provide an adequate home for her children.[12]

(d) *Serious Harm to Children.* The same evidence authorized the juvenile court to find that continued deprivation was likely to cause serious physical, mental, emotional, or moral harm to the children.[13] It is clear from the evidence detailed above that the children have already been harmed — e.g., the molestation of the six-year-old girl — and that there is ample support for the juvenile court's finding in the termination order that the mother's actions have placed her children at continued risk due to her failure to protect, safeguard, and supervise them. Additionally, as the court also noted, expert testimony showed that partially as a result of the improper parenting, the children have severe intellectual and psychiatric problems that need special treatment and thus need a capable parent to monitor that treatment.

Thus, we conclude that the juvenile court properly found clear and convincing evidence of parental misconduct and inability.

2. *Best Interests of the Children.* If there is clear and convincing evidence of parental misconduct or inability, the court then considers whether termination of parental rights is in the best interests of the children, after considering the physical, mental, emotional, and moral condition and needs of the children, including the need for a secure and stable home.[14] "The same evidence showing parental misconduct or inability may, and here does, establish this requirement."[15]

Accordingly, because a rational trier of fact could have found clear and convincing evidence of parental misconduct or inability and could also have found that termination of parental rights was in the

---

[11] (Citations and punctuation omitted.) Id. at 395.

[12] Id.

[13] See *In the Interest of A. M. L.*, 242 Ga. App. 121, 124 (1) (d) (527 SE2d 614) (2000).

[14] OCGA § 15-11-94 (a).

[15] (Citation and punctuation omitted.) *In the Interest of J. B. A.*, 230 Ga. App. 181, 185 (2) (495 SE2d 636) (1998).

best interests of the children, the court did not err in terminating the mother's parental rights to the children.

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED DECEMBER 18, 2001.

*Robert F. Pirkle*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, Gary A. Sinrich*, for appellee.