A03A0816. IN THE INTEREST OF M. A. M., a child.

(583 SE2d 517)

MILLER, Judge.

The mother of minor M. A. M. appeals from the juvenile court's order terminating her parental rights with respect to M. A. M. On appeal she contends that the State did not show by clear and convincing evidence that the termination of her parental rights was warranted. We discern no error and affirm.

Our responsibility as an appellate court is well established:

Construing the evidence most favorably to the findings of the court, the question on appeal is whether a rational trier of fact could have found clear and convincing evidence (a) of parental misconduct or inability and (b) that terminating parental rights was in the best interest of the child. Parental misconduct or inability is shown by evidence (i) the child is deprived, (ii) lack of parental care caused the deprivation, (iii) such is likely to continue, and (iv) the continued deprivation is likely to cause serious harm to the child.

(Citations omitted.) *In the Interest of K. D. S.*, 237 Ga. App. 865 (1) (517 SE2d 102) (1999); see OCGA § 15-11-94 (a), (b) (4) (A).

1. *Parental Misconduct or Inability.* Construing the evidence in the light most favorable to the juvenile court's findings, we will address each of the aforementioned factors.

(a) *Deprivation.* The evidence reveals that in March 2002, the juvenile court found by clear and convincing evidence that M. A. M. was deprived and ordered that the child be placed in the temporary legal custody of the Department of Human Resources (the "Department"). As this order was not appealed, the mother was bound by this finding for purposes of the termination hearing. See *In the Interest of R. G.*, 249 Ga. App. 91, 93 (1) (a) (547 SE2d 729) (2001).

(b) *Lack of Parental Care or Control.* The prior court order that determined that M. A. M. was deprived also stated that the deprivation occurred as a result of the child being "without proper parental care or control, sustenance, or education as required by law, or other care or control necessary for her physical, mental, or emotional health or morals." Thus, the mother was also bound by this court finding for purposes of the termination hearing. *In the Interest of R. G.*, 249 Ga. App. at 93 (1) (a).

Moreover, the evidence revealed that in March 2001, M. A. M. was admitted to a hospital with serious signs of neglect, including severe diaper rash and gangrene in one of her toes that may have spread into her bloodstream. The Department sought and obtained temporary custody of M. A. M. and thereafter filed a deprivation peti-

tion on March 28, 2001. The court found the child deprived, and a case plan for reunification was formulated.

The mother did not provide financial support for M. A. M. for the year and a half that M. A. M. remained in State custody (besides giving M. A. M. some clothes on two occasions), nor did she obtain employment despite being required to find stable employment as part of her reunification plan. She also failed to maintain a stable home, in that she lived in two hotels during the time that M. A. M. was in State custody and failed to maintain a consistent residence. Despite being required to obtain a psychological evaluation, she never did so. She further failed to complete a six-week parenting course that could have fulfilled a requirement of her case plan and instead only took a one-day parenting seminar five days before the termination hearing. She also had a history of violence from an incident where she shot M. A. M.'s father while M. A. M. was in State custody.

In contravention of her case plan, the mother also did not visit M. A. M. on a consistent basis. She did not request any visits with M. A. M. prior to December 2001, and even after receiving a visitation schedule did not visit M. A. M. until January 2002. She thereafter only visited M. A. M. in April, May, and August 2002, and once more for eight minutes on the day of the termination hearing in September. The mother was unable to visit M. A. M. in June because she was incarcerated at the time. Even when the mother visited M. A. M., she often brought other friends with her and did not develop any sort of parental bond with M. A. M. In fact, M. A. M. often retreated from her mother and did not recognize or refer to the mother as her mother. A caseworker testified as to the significant risk posed to M. A. M. from her extended time in foster care and the potential for M. A. M. to drift through foster care limbo, as well as the dangers posed by the lack of stability in M. A. M.'s life.

Accordingly, a rational trier of fact could have found clear and convincing evidence that the mother's lack of proper parental care or control caused the child to be deprived. See OCGA § 15-11-94 (b) (4) (C) (i)-(ii).

(c) *Lack of Care or Control Likely to Continue.* Evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the child is returned to her parent. *In the Interest of A. A.,* 252 Ga. App. 167, 172 (2) (c) (555 SE2d 827) (2001). Prior to the original deprivation hearing, M. A. M. had been admitted to the hospital with signs of neglect such as a severe diaper rash and a gangrenous infection in her toe that had spread into her bloodstream. The conditions under which the mother was living that led to the original finding of deprivation had not improved since that time. The mother's history of continued instability, violence against M. A. M.'s

father, and her failure to take an active role in M. A. M.'s life while M. A. M. was in State custody, along with the other evidence detailed above, authorized the juvenile court's finding that the lack of proper parental care or control was likely to continue.

Even in light of some evidence that the mother made an effort to comply with a portion of her case plan (by completing a one-day parenting class despite failing to complete other more time-intensive classes), such an effort is not conclusive of parental fitness in light of her prior history. See *In the Interest of A. G.*, 253 Ga. App. 88, 90-91 (1) (c) (558 SE2d 62) (2001). "[T]he juvenile court was authorized to infer from the evidence of past conduct that the improvements in the mother's situation were not sufficient to justify maintaining the [child] in foster care limbo in hopes that the mother could achieve stability and provide an adequate home for her [child]." (Footnote omitted.) Id. at 91 (1) (c).

(d) *Serious Harm to the Child.* The juvenile court was authorized to find from the same evidence detailed above that the deprivation was likely to cause serious physical, mental, emotional, or moral harm to the child. See, e.g., *In the Interest of A. M. L.*, 242 Ga. App. 121, 124 (1) (d) (527 SE2d 614) (2000). Indeed, the mother's instability had already created circumstances that led to M. A. M.'s admission to a hospital with signs of serious neglect. The lack of attention that the mother gave to M. A. M. while M. A. M. was in foster care further eliminated any bond between M. A. M. and the mother, which placed M. A. M. further at risk to perpetually drift through the foster care system.

Thus, we conclude that the juvenile court could have found clear and convincing evidence of parental misconduct or inability.

2. *Best Interest of the Child.* When clear and convincing evidence exists of parental misconduct or inability, the juvenile court then considers whether termination of parental rights is in the best interest of the child, in light of the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. OCGA § 15-11-94 (a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citations and punctuation omitted.) *In the Interest of J. B. A.*, 230 Ga. App. 181, 185 (2) (495 SE2d 636) (1998).

Since a rational trier of fact could have found (1) clear and convincing evidence of parental misconduct or inability and (2) that termination of parental rights was in the best interest of M. A. M., the juvenile court did not err in terminating the mother's parental rights to M. A. M.

*Judgment affirmed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED JUNE 13, 2003.

*Carla J. Friend*, for appellant.

*Thurbert E. Baker*, Attorney General, *Dennis R. Dunn*, Deputy Attorney General, *William C. Joy*, Senior Assistant Attorney General, *Shalen S. Nelson*, Assistant Attorney General, *Robert E. Hall*, for appellee.