A04A1513. IN THE INTEREST OF K. W., a child.
(604 SE2d 659)

MILLER, Judge.

A juvenile court terminated the parental rights of both mother and father as to the child K. W. Only the father appeals the juvenile court's order, contending that the State did not show by clear and convincing evidence that the termination was warranted, and that the juvenile court judge should have recused himself from the termination hearing. We discern no error and therefore affirm.

Our responsibility as an appellate court in cases such as this one is well established:

> Construing the evidence most favorably to the findings of the court, the question on appeal is whether a rational trier of fact could have found clear and convincing evidence (a) of parental misconduct or inability and (b) that terminating parental rights was in the best interest of the child. Parental misconduct or inability is shown by evidence [that] (i) the child is deprived, (ii) lack of parental care caused the deprivation, (iii) such [deprivation] is likely to continue, and (iv) the continued deprivation is likely to cause serious harm to the child.

(Citations omitted.) *In the Interest of K. D. S.*, 237 Ga. App. 865 (1) (517 SE2d 102) (1999); see OCGA § 15-11-94 (a), (b) (4) (A).

1. *Parental Misconduct or Inability*. Construing the evidence in the light most favorable to the juvenile court's findings, we address each of the relevant factors in turn.

(a) *Deprivation*. The evidence reveals that in April 2001, the juvenile court found by clear and convincing evidence that K. W. was deprived and ordered that the child be placed in the temporary legal custody of the Department of Human Resources (the "Department"). As this order was not appealed, the father is bound by this finding for purposes of the termination hearing. See *In the Interest of R. G.*, 249 Ga. App. 91, 93 (1) (a) (547 SE2d 729) (2001).

(b) *Lack of Parental Care or Control*. The court order determining that K. W. was deprived found that the father had not supported K. W., had "failed to protect [her] from the mother's neglect," and had not legitimated her. The court thus concluded that K. W. had been "deprived and without proper parental care or control and supervision necessary for [her] physical, mental, and emotional health and morals." The father is also bound by this finding for purposes of the termination hearing. *In the Interest of R. G.*, 249 Ga. App. at 93 (1) (a).

Moreover, the evidence revealed that between the finding of deprivation and the termination hearing, the father repeatedly flouted the court's instructions to break off a sometimes violent and drug-abusing relationship with the child's mother. The father and mother were often seen together in public, and the mother was arrested in his home in February 2003, only a few weeks before the court's review of the child's trial placement there. As a result of these and other problems, the court determined in March 2003 that the child should no longer remain in her father's home. After learning that K. W. had suffered nightmares following her father's visits and told her foster mother that she did not want to see him, the court then determined that further visitation by the father was not in the child's best interest. From that time until the termination hearing, the father never again asked for visitation with K. W. He also continued his relationship with the child's mother despite repeated instructions and counseling to the contrary, and lied about the ongoing nature of that relationship to a caseworker who had previously advocated that the child be placed in his home. Finally, in September 2003, both mother and father were arrested after an altercation in the father's home. He was charged with obstruction and passing bad checks.

Thus a rational trier of fact could have found clear and convincing evidence that the father's lack of proper parental care or control caused the child to be deprived. See OCGA § 15-11-94 (b) (4) (C) (i)-(ii).

(c) *Lack of Care or Control Likely to Continue*. Evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the child is returned to her parent. *In the Interest of A. A.*, 252 Ga. App. 167, 172 (2) (c) (555 SE2d 827) (2001). There was abundant evidence, from well before the deprivation hearing until the termination hearing, to authorize the juvenile court's finding that the lack of proper parental care or control was likely to continue. Even where there was some evidence that the father sometimes made an effort to comply with a portion of his case plan to be reunited with K. W., such an effort is not conclusive of parental fitness in light of both his prior history and his proclivity to relapse into destructive behavior, as when he was seen with both child and mother only weeks after the court had approved a trial placement in his home. See *In the Interest of A. G.*, 253 Ga. App. 88, 90-91 (1) (c) (558 SE2d 62) (2001).

"[T]he juvenile court was authorized to infer from the evidence of past conduct that the improvements in the [father's] situation were not sufficient to justify maintaining the [child] in foster care limbo in hopes that the [father] could achieve stability and provide an adequate home for [the child]." (Footnote omitted.) Id. at 91 (1) (c).

(d) *Serious Harm to the Child.* The juvenile court was authorized to find from the same evidence detailed above that continued deprivation of the kind already found was likely to cause serious physical, mental, emotional, or moral harm to the child. See, e.g., *In the Interest of A. M. L.*, 242 Ga. App. 121, 124 (1) (d) (527 SE2d 614) (2000).

Thus we conclude that the juvenile court could have found clear and convincing evidence of parental misconduct or inability.

2. *Best Interest of the Child.* When clear and convincing evidence exists of parental misconduct or inability, the juvenile court then considers whether termination of parental rights is in the best interest of the child, in light of the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. OCGA § 15-11-94 (a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citation and punctuation omitted.) *In the Interest of J. B. A.*, 230 Ga. App. 181, 185 (2) (495 SE2d 636) (1998).

3. Finally, the father argues that the juvenile court judge should have recused himself from the termination hearing because he had previously heard a nonreunification motion in the same case. Uniform Juvenile Court Rules 27.1 and 27.2 provide that motions to recuse consisting of "bare conclusions and opinions," not supported by an affidavit "clearly stat[ing] the facts and reasons for the belief that bias or prejudice exists," "shall not be legally sufficient to support the motion or warrant further proceedings." UJCR 27.2. Here, the father offered no evidence to support his contention that the juvenile court judge was biased. As a result, his argument is without merit. See *In the Interest of L. M.*, 219 Ga. App. 746, 747-748 (1) (466 SE2d 887) (1995).

Since a rational trier of fact could have found clear and convincing evidence of parental misconduct or inability, and that termination of parental rights was in the best interest of K. W., the juvenile court did not err in terminating the father's parental rights as to that child.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 15, 2004.

*James J. Anagnostakis*, for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Shalen S. Nelson, Senior Assistant Attorneys General, Laura W. Hyman, Assistant Attorney General, T. Michael Flinn,* for appellee.