## A04A2093. IN THE INTEREST OF M. K. H. et al.
(607 SE2d 202)

MILLER, Judge.

A juvenile court terminated the parental rights of both mother and father as to the children M. K. H. and M. H. H. Both parents appeal the juvenile court's order, contending that the State did not show by clear and convincing evidence that the termination was warranted. We find no error and therefore affirm.

Our responsibility as an appellate court in cases such as this one is well established:

Construing the evidence most favorably to the findings of the court, the question on appeal is whether a rational trier of fact could have found clear and convincing evidence (a) of parental misconduct or inability and (b) that terminating parental rights was in the best interest of the child. Parental misconduct or inability is shown by evidence [that] (i) the child is deprived, (ii) lack of parental care caused the deprivation, (iii) such [deprivation] is likely to continue, and (iv) the continued deprivation is likely to cause serious harm to the child.

(Citations omitted.) *In the Interest of K. D. S.*, 237 Ga. App. 865 (1) (517 SE2d 102) (1999); see OCGA § 15-11-94 (a), (b) (4) (A).

1. *Parental Misconduct or Inability.* Construing the evidence in the light most favorable to the juvenile court's findings, we address each of the relevant factors in turn.

(a) *Deprivation.* The evidence reveals that in April 2001, the juvenile court found by clear and convincing evidence that M. K. H. was deprived as a result of medical neglect, and returned custody to the mother only under a protective order. In February 2002, the court found that both children were deprived due to medical and other neglect and ordered that they be placed in the temporary legal custody of the Department of Human Resources (the "Department"). As neither of these orders was appealed, both parents are bound by their findings of fact for purposes of the termination hearing. See *In the Interest of R. G.*, 249 Ga. App. 91, 93 (1) (a) (547 SE2d 729) (2001).

(b) *Lack of Parental Care or Control.* The February 2002 court order determining that both children were deprived found that they were "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [their] physical, mental, or emotional health or morals." Both parents are also bound by this finding for purposes of the termination hearing. *In the Interest of R. G.*, supra, 249 Ga. App. at 93.

The evidence also revealed that between the finding of deprivation and the termination hearing, the mother failed to pay child support, scratching her signature off the case plan when she learned of her obligation to do so; failed to complete anger management and parenting classes; tested negative at only one of twenty-one scheduled drug screens, missing a number of them because she did not want to spend money on bus tickets from North Carolina; and told a citizen's review panel that she was high on marijuana at that moment, and was going "to smoke blunts until I was ready to stop." She showed what her own attorney called "evident mental issues" at the termination hearing itself, as when she snapped, "I ain't paying no damn child support. I got to go. I got something to do," and when

she refused to answer any further questions. She was diagnosed with bipolar and other mental disorders in April 2002, but failed to receive any treatment, and could neither maintain a stable residence nor find employment. Finally, of the thirty-five visitations scheduled during the two years that the children were in the Department's custody, the mother failed to appear on time or at all for eleven. Six others were terminated early as a result of her behavior, including one involving an assault on a Department supervisor and another during which she and her male companion apparently used drugs. On this latter visit, a case manager observed M. K. H. repeatedly and forcefully slap her mother in the face; M. H. H. usually screamed and cried that he did not want to see his mother.

The evidence also revealed that after refusing to sign the case plan, the father saw the children only once after the deprivation hearing, never asked to see the children after his single meeting with the case manager, and never paid any child support. At the termination hearing, he admitted that he had not supported two other children for the past two years, that he was under a court order to have no contact with another child as a result of a guilty plea for child sexual molestation, and that he was currently in jail for violating his probation.

Thus a rational trier of fact could have found clear and convincing evidence that the parents' lack of proper parental care or control caused these children to be deprived. See OCGA § 15-11-94 (b) (4) (C) (i)-(ii).

(c) *Lack of Care or Control Likely to Continue.* Evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to the parents. See *In the Interest of A. A.*, 252 Ga. App. 167, 172 (2) (c) (555 SE2d 827) (2001). From well before the deprivation hearing until the termination hearing, there was sufficient evidence to authorize the juvenile court's finding that the lack of proper parental care or control was likely to continue. Even though there was some evidence that the mother showed love to her children at her visitation sessions, such an effort is not conclusive of parental fitness in light of her history of neglect and her proclivity to relapse into destructive behavior, as at the termination hearing itself. See *In the Interest of A. G.*, 253 Ga. App. 88, 90-91 (1) (c) (558 SE2d 62) (2001).

(d) *Serious Harm to the Child.* Both children in this case exhibited distress before and during contact with the mother, as when M. H. H. screamed and cried that he did not want to see his mother, and when M. K. H. repeatedly slapped her during her visitation sessions. There was no evidence that either child had any substantial relationship with their father, a convicted child molester. The juvenile court was authorized to find from this evidence that continued deprivation

of the kind already found was likely to cause serious physical, mental, emotional, or moral harm to the children. See, e.g., *In the Interest of A. M. L.*, 242 Ga. App. 121, 124 (1) (d) (527 SE2d 614) (2000) (child's behavioral problems would be exacerbated by any further episodes of abandonment).

Thus we conclude that the juvenile court could have found clear and convincing evidence of parental misconduct or inability.

2. *Best Interest of the Child.* When clear and convincing evidence exists of parental misconduct or inability, the juvenile court then considers whether termination of parental rights is in the best interest of the child, in light of the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. OCGA § 15-11-94 (a). The same evidence showing parental misconduct or inability may establish that the children's best interests required the termination of the parents' rights. See *In the Interest of J. B. A.*, 230 Ga. App. 181, 185 (2) (495 SE2d 636) (1998). Moreover, the Department's case manager testified that the Department had been unable to locate a suitable family member with whom to place the children, and that the Department would be able to achieve permanency for them "swiftly" if the termination petition was granted. She added that the mother had sometimes considered surrendering her rights voluntarily so that the present foster parent could adopt the children. Thus there was no abuse of discretion when the juvenile court found that the children's best interests would be served by placing them with the Department. See *In the Interest of Z. B.*, 252 Ga. App. 335, 339 (2) (556 SE2d 234) (2001).

Since a rational trier of fact could have found clear and convincing evidence of parental misconduct or inability, and that termination of parental rights was in the best interests of both children, the juvenile court did not err in terminating both parents' rights as to those children.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 19, 2004.

*Donald C. Gibson, John P. Rivers*, for appellants.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, James A. Chamberlin, Jr.*, for appellee.