655 S.E.2d 698 (2007)
In the Interest of H.K. et al., children.
No. A07A2271.
Court of Appeals of Georgia.
December 11, 2007.
Charles E. Day, Monroe, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Lee R. Moss, for appellee.
MILLER, Judge.
The Juvenile Court of Walton County terminated the parental rights of the mother and fathers of H.K., D.H., and T.C. (collectively, the "Children").[1] The mother appeals, contending that the trial court erred in finding that (i) the present deprivation of the Children was likely to continue and (ii) the deprivation was likely to cause harm to the Children. We find no error and therefore affirm.
A juvenile court's termination of parental rights is a two-step process. The first step requires a finding of parental misconduct or *699 inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home. OCGA § 15-11-94(b)(4)(A)(i)-(iv); see, e.g., In the Interest of T.F., 250 Ga.App. 96, 97-98(1), 550 S.E.2d 473 (2001).
"On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost." (Footnote omitted.) In the Interest of F.C., 248 Ga.App. 675, 549 S.E.2d 125 (2001). In so doing, we "neither weigh evidence nor determine the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met." (Citation and punctuation omitted.) In the Interest of M.J.L., 284 Ga.App. 176, 643 S.E.2d 395 (2007).
So viewed, the record shows that between 2000 and 2005, the Gwinnett County and Walton County Departments of Family and Children Services conducted at least six investigations related to the neglect of the Children and the mental health of their mother. The mother was offered mental health treatment, in-home therapy, and a parent aide, but her cooperation was minimal.
On October 19, 2005, the Walton County Department of Family and Children Services (the "Department") reported that the Children were again living in conditions that were unsafe and unsanitary and that their mother had refused to cooperate in obtaining treatment for her mental health problems.
On October 28, 2005, following a hearing, the juvenile court found that there was probable cause to believe that the Children were deprived pursuant to OCGA § 15-11-2(8)(A) and placed the Children in the temporary custody of the Department. On November 18, 2005, the Department submitted a reunification case plan for each of the Children, but on April 19, 2006, after several additional hearings, the juvenile court found that the Children's mother had not successfully completed her reunification case plan and maintained custody of the Children with the Department.
On October 5, 2006, the juvenile court extended the Department's custody of the Children after finding that their mother had not maintained a stable home, was living with a convicted child molester whom she allowed to visit the Children, had permitted two women to live with her who were engaging in prostitution in the home, and became engaged to a man whose last name she did not know but whom she knew to be on probation.
On February 5, 2007, the Department filed a petition to terminate the parental rights of the Children's mother. At the hearing, the Children's mother admitted that she allowed the Children to interact with her mother's boyfriend, who was a convicted child molester. She also claimed to have no concerns about the Children having a relationship with her father or with the father of T.C., both of whom were also convicted child molesters. She also acknowledged, however, that T.C.'s father had physically abused her, that he had threatened to rape ten-year-old H.K., and that she had asked H.K. to deliver love notes that she had written to him. A counselor who had worked with the Children's mother testified that the mother suspected that H.K. may have been molested by one of her ex-boyfriends. In addition, the Children's mother admitted that she had not paid any child support for the Children while they had been in the custody of the Department and that she had told H.K. that she had tried to kill herself and did not see how that could have scared the child.
A clinical psychologist who had observed and evaluated the Children's mother testified that the mother suffered from post-traumatic stress disorder and depression, both of which *700 would likely be responsive to a combination of therapy and medication, as well as schizoid personality disorder and masochistic personality disorder, both of which were unlikely to be responsive to medication or therapy that was "not of multi-year duration and intensity." As a result of the personality disorders, the psychologist testified that the mother was likely to engage in a "pervasive pattern of self-defeating behavior." The psychologist also testified that the Children faced "a significant risk of abuse and neglect" given their mother's parenting scores and that their mother did not have the mental ability to provide stability for the Children.
Finally, the parent aide who had assisted the Children's mother testified that the mother and other family members whom the mother allowed around the Children often went into rages during the visits with the Children, that the mother allowed D.H. to follow her mother's boyfriend (a convicted child molester) into the bathroom, and that one of the visits with the Children became so chaotic after the mother defended the right of her mother's boyfriend to be present with the Children that the parent aide felt compelled to call 911.
The Children's mother claims that the trial court erred in finding that (i) the present deprivation of the Children was likely to continue and (ii) the deprivation was likely to cause harm to the Children. We disagree.
Evidence of past conduct may be considered in determining whether present deprivation is likely to continue if a child is returned to a parent. See In the Interest of A.A., 252 Ga.App. 167, 172(2)(c), 555 S.E.2d 827 (2001). Here, the parent aide testified that while she had seen "a little bit of improvement" in the mother's parenting skills, it was always followed by backsliding and decisions that negatively affected the Children. Moreover, the clinical psychologist who evaluated the Children's mother testified that her personality disorders (which increased the chances of her engaging in a pattern of self-defeating behavior) were likely to continue, even with therapy and medication. Given that the mother's poor decision making apparently resulted in large part from mental health problems that were unlikely to be remedied, there was sufficient evidence to authorize the juvenile court's finding that the lack of proper parental care or control was likely to continue. See In the Interest of A.G., 253 Ga.App. 88, 90-91(1)(c), 558 S.E.2d 62 (2001).
In addition, clear and convincing evidence also supported the juvenile court's conclusion that the continued deprivation of the Children is likely to cause them serious harm. The guardian ad litem recommended that the juvenile court terminate the mother's parental rights based on her failure to protect the Children in the past and the indications that she would be unable to protect them in the future. In addition, the psychologist testified that the mother's extensive mental health issues placed the Children at a significant risk for abuse and neglect and made it unlikely that the mother could provide them with a stable home. As a result of such instability, the Children faced "a fairly grim scenario of mental health concerns of increasing severity as they age." See, e.g., In the Interest of N.M.H., 252 Ga.App. 353, 358, 556 S.E.2d 454 (2001) (holding that "[c]hildren need permanence of home and emotional stability or they are likely to suffer serious emotional problems") (punctuation and footnote omitted).
Because clear and convincing evidence supported the juvenile court's findings that the present deprivation of the Children was likely to continue and that the deprivation was likely to cause harm to the Children, the juvenile court did not err in making such findings. In the Interest of F.C., supra, 248 Ga.App. at 675, 549 S.E.2d 125.
Judgment affirmed.
BARNES, C.J., and SMITH, P.J., concur.
NOTES
[1] The fathers of H.K., D.H., and T.C. have not appealed the termination of their parental rights.