690 S.E.2d 472 (2010)
In the Interest of G.A.M., a child.
No. A09A2335.
Court of Appeals of Georgia.
January 29, 2010.
*473 David R. Savoy, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Asst. Atty. Gen., Elizabeth M. Williamson, Rochelle A. Doyle, Asst. Attys. Gen., for appellee.
MILLER, Chief Judge.
A juvenile court terminated the parental rights of the mother and the father with respect to their child G.A.M. We granted the mother's application for discretionary review, and she appeals the juvenile court's order. In two enumerations of error, the mother contends that the termination was unsupported by clear and convincing evidence, because the evidence showed a steady employment history, her ability to provide stable and acceptable housing to the child, her recovery from drug addiction, and a strong mother-child bond. Finding that any rational trier of fact could have found by clear and convincing evidence that the mother's parental rights had been lost under the circumstances of this case, we affirm.
On appeal from a termination order, this Court views the evidence "in the light most favorable to the appellee [and determines whether] any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Punctuation omitted.) Blackburn v. Blackburn, 249 Ga. 689, 694(2), 292 S.E.2d 821 (1982). In so doing, we "neither weigh evidence nor determine the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm *474 unless the appellate standard is not met." (Citation and punctuation omitted.) In the Interest of M.J.L., 284 Ga.App. 176, 643 S.E.2d 395 (2007).
A juvenile court's termination of parental rights is a two-step process:
The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.
(Footnotes omitted.) In the Interest of T.F., 250 Ga.App. 96, 98(1), 550 S.E.2d 473 (2001). See OCGA § 15-11-94(a), (b)(4)(A)(i)-(iv).
1. Parental Misconduct or Inability. The mother contends that the termination of her parental rights was unwarranted by the evidence. Construing the evidence in the light most favorable to the juvenile court's findings (In the Interest of H.K., 288 Ga.App. 831, 655 S.E.2d 698 (2007)), we address each of the relevant factors in turn and disagree.
(a) Deprivation. In February and December 2006, the juvenile court found that the child was deprived due to allegations of substance abuse against the mother, the mother's refusal to comply with random substance abuse testing, her failure to test negative for drug abuse for a period of six months, her failure to secure adequate housing and employment, and neglect of the child's medical and dental needs. Given the foregoing, the juvenile court ordered that the child be placed in the temporary legal custody of the Forsyth County Department of Family and Children Services (the "Department"). Given that these orders were not appealed, the mother was bound by the juvenile court's findings of fact for purposes of the termination hearing. See In the Interest of R.G., 249 Ga.App. 91, 93(1)(a), 547 S.E.2d 729 (2001).
(b) Cause of Deprivation. The orders determining that the child was deprived also found that the child was "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [the child's] physical, mental, or emotional health or morals." The mother was also bound by this finding for purposes of the termination hearing. Id.
The evidence reveals that between the February 2006 deprivation finding and the September 15, 2008 termination hearing, the mother failed to achieve many of the goals set out in her reunification plan. Specifically, after completing the residential portion of her drug treatment program, the mother chose not to complete the aftercare portion thereof and was terminated from the program for noncompliance with the program rules; failed to demonstrate competence in applying the parenting skills she had been taught in the parenting classes she completed; failed to pay court-ordered child support except to the extent that support payments were not automatically deducted from her pay when she was employed; was in arrears as to court-ordered child support at the time of the termination hearing; and lied to a caseworker regarding her employment status on multiple occasions.
At the time of the termination hearing, the child was 14 years old, suffered from attention deficit hyperactivity disorder, and was a special education student in the sixth grade. The child entered foster care frightened, hungry, suffering from severe dental neglect which required the extraction of ten teeth, and failing the fifth grade. With the structure and assistance provided by a caseworker and his foster mother, the child regularly received his medication for attention deficit hyperactivity disorder, attended summer school, received special outpatient sexual abuse treatment,[1] and ultimately was promoted *475 to the sixth grade. There the child flourished, making the A/B Honor Roll, being designated a Star Student, and passing Georgia's Criterion-Referenced Competence Tests.[2]
Given this evidence, a rational trier of fact could have found clear and convincing evidence that the mother's lack of proper care or control caused the child to be deprived. See OCGA § 15-11-94(b)(4)(C)(i)-(iii); Blackburn, supra, 249 Ga. at 694(2), 292 S.E.2d 821.
(c) Lack of Care or Control Likely to Continue. Evidence of past conduct is properly considered in determining whether the deprivation is likely to continue if the child is returned to the parent. In the Interest of A.A., 252 Ga.App. 167, 172(2)(c), 555 S.E.2d 827 (2001). The juvenile court must base its decision on more than positive promises of good behavior which past conduct has proven will likely not be carried out. In the Interest of D.I.W., 215 Ga.App. 644, 646(1), 451 S.E.2d 804 (1994).
From well before the deprivation hearing through the termination hearing, there was sufficient evidence to authorize the juvenile court's finding that the lack of proper parental care or control was likely to continue. Even though the mother had her drug habit under control at the time of the termination hearing, such fact is not conclusive of parental fitness in light of her potential for relapse given her failure to complete the aftercare portion of her drug treatment program, her failure to successfully complete two earlier drug treatment programs, her history of neglect, her failure to maintain stable employment and housing, and her failure to pay her billsall of which were stated goals of her reunification plan. See In the Interest of A.G., 253 Ga.App. 88, 90-91(1)(c), 558 S.E.2d 62 (2001) (trial court determines whether a parent's conduct indicates hope of rehabilitation).
(d) Serious Harm to Child. This Court has held that facts supporting "a juvenile court's conclusion that a child is deprived and that the deprivation is likely to continue if placed with the parent also support a conclusion that continued deprivation would likely cause the child serious harm." (Footnote omitted.) In the Interest of K.A.S., 279 Ga. App. 643, 651(1)(d), 632 S.E.2d 433 (2006). Other testimony at the termination hearing indicated that the mother failed to appear for supervised visitation with the child in a two month time period after leaving her drug treatment program and while living with a boyfriend; failed to advance beyond supervised visitation to "all day unsupervised visitation or overnight visits ..."; and failed to demonstrate a reliable capacity for a parent-to-child relationship with the child rather than that of playmate-to-playmate.
Further, the evidence showed that the mother had been forced to sell three residences and was evicted from another in the two and a half years preceding the termination hearing for inability to make the required payments. At the time of the termination hearing, the mother also faced criminal charges for writing bad checks and lacked a permanent residence. Despite the fact that she had then been employed for three months, the mother's employment history demonstrated her inability to maintain stable employment. And, in the event the child were returned to her, the mother was uncertain of her ability to pay for utilities and of what the child would think of her.
Given the foregoing, the juvenile court was authorized to find from this evidence that continued deprivation of the kind already found was likely to cause serious physical, mental, emotional, or moral harm to the child in the future. See, e.g., In the Interest of A.M.L., 242 Ga.App. 121, 124(1)(d), 527 S.E.2d 614 (2000) (child's behavioral problems would be exacerbated by further contact with parent).
2. Best Interests of the Child. The same evidence showing parental misconduct or inability may, and here does, establish that the child's best interests required the termination of the mother's rights. In the Interest of J.B.A., 230 Ga.App. 181, 185(2), 495 S.E.2d 636 (1998). Thus, the juvenile court did not abuse its discretion in finding that the child's *476 best interests would be served by placing the child with the Department. See In the Interest of Z.B., 252 Ga.App. 335, 339(2), 556 S.E.2d 234 (2001).
The mother's claims to the contrary notwithstanding, a rational trier of fact could have found clear and convincing evidence of the mother's misconduct or inability, and that the termination of her parental rights was in the best interests of the child. The juvenile court, therefore, did not err in terminating the mother's rights to the child. Blackburn, supra, 249 Ga. at 694(2), 292 S.E.2d 821.
Judgment affirmed.
ANDREWS, P.J., and BARNES, J., concur.
NOTES
[1] The child had been accused of sexual molestation which required that he be closely monitored when in the presence of younger children.
[2] Commonly referred to as CRCT tests.