**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**September 27, 2012**

# In the Court of Appeals of Georgia

A12A1631, A12A1632. IN THE INTEREST OF S .R. C. J., A CHILD.

MCFADDEN, Judge.

The juvenile court terminated the mother's parental rights to her child, S. R. C. J., but declined to place the child with the maternal grandmother. We granted the mother's and grandmother's applications for discretionary review, and they appeal the juvenile court's order. The mother argues that insufficient admissible evidence supports the termination of her parental rights, but we find that sufficient admissible evidence supports the juvenile court's decision. The grandmother argues that the juvenile court considered hearsay; that the juvenile court erred by failing to consider family members for placing the child; that the Department of Family and Children Services failed to comply with certain time limitations in the regulations to the

Interstate Compact on the Placement of Children, OCGA §§ 39-4-1 through 39-4-10; and that certain testimony of a case worker at the termination hearing was improperly limited because of time constraints. We hold that sufficient admissible evidence supported the juvenile court's decision; that the juvenile court did not err in failing to consider the grandmother for placement of the child; that the grandmother has not shown that the regulations to the Interstate Compact on the Placement of Children apply; and that the grandmother cannot challenge the limitation of the case worker's testimony because she did not raise the issue in the juvenile court. We thus affirm.

1.  *Facts*

On appeal of a juvenile court's order terminating a parent's rights, we view the evidence

> in the light most favorable to the juvenile court's ruling, and [our] review is limited to addressing the question of whether any rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated. In this review, [we] must necessarily defer to the juvenile court's fact finding, weighing of the evidence, and credibility determinations.

(Citations and punctuation omitted.) *In the Interest of D. T .A.*, 312 Ga. App. 26, 27 (717 SE2d 536) (2011).

2

Viewed in a light most favorable to the juvenile court's ruling, the evidence shows that the mother is a Connecticut resident. S. R. C. J. is the mother's fifth child. The state of Connecticut removed her four older children from her custody because of her drug use and a history of domestic violence; Connecticut sought termination of her parental rights to those children. The mother tested positive for cocaine while pregnant with S. R. C. J. and was told that Connecticut would seek to remove the child at birth. The mother left Connecticut, without informing her case worker, to give birth to S. R. C. J. in Georgia. Her sister lived in Camden County, Georgia, and the mother planned on giving custody of the baby to her sister. The mother's Connecticut caseworker testified that she notified the Camden County Department of Family and Children Services ("DFCS") that the mother had gone into labor, illicit drugs were in her system, and Connecticut authorities had "some knowledge" that she might travel to Georgia to deliver the baby.

S. R. C. J. was removed from her mother's custody at birth and has remained in the custody of DFCS. DFCS's attempt to test the baby for drugs at the time of her birth was unsuccessful, but she was born with symptoms of withdrawal, including tremors and shaking. She also was born with a heart problem. She has neurological

problems, sleep disturbances and eating issues. S. R. C. J. is receiving services to remedy the issues caused by her withdrawal. She receives treatment by a cardiologist.

Two months after S. R. C. J.'s birth, the mother returned to Connecticut, although DFCS had established a case plan for her. One of the goals of the case plan required the mother to complete parenting classes but she did not do so. Another goal was for the mother to maintain a source of income to support her child and to maintain stable, suitable housing, but she provided DFCS with no verification of any income, employment or housing. The mother met the goal of obtaining a substance abuse assessment, but she failed to complete any of the assessment recommendations -- that she attend substance abuse treatment, that she attend outpatient services, that she obtain mental health counseling and a psychological assessment -- even though completing those recommendations was one of her case plan goals. The case plan required the mother to submit to random drug screens, and the drug screens that DFCS was able to administer came back negative. But once the mother left Georgia, DFCS was unable to administer any drug screens. The mother did not pay any of the required child support of $25 per month. During the two months the mother resided in Georgia, she visited the child 13 times. She had not seen the child for five months before the hearing on the petition to terminate her parental rights, explaining that it

4

was "very hard and expensive" to travel between Connecticut and Georgia. For the four to five months before the termination hearing, the mother had not kept DFCS informed of her whereabouts and DFCS lost contact with her. She did not maintain contact with her attorney and learned of the termination hearing through published notice. The mother testified that she knew she had "messed up," but she sought "a second chance."

The grandmother gave the mother pain medication prescribed for the grandmother. This concerned the Connecticut authorities because of the mother's substance abuse history. The grandmother testified that she did not know that it was wrong to give her prescription drugs to the mother until a caseworker told her so. The grandmother denied to the Connecticut social worker that her daughter had a substance abuse problem, but she admitted it at the hearing. The grandmother has never seen the child and called DFCS only once about the child. After the termination petition was filed, the grandmother intervened in the proceedings and her attorney contacted DFCS expressing her interest in visiting the child. DFCS had not evaluated the grandmother as a placement option because, until her attorney's involvement, after S. R. C. J. had been in DFCS custody for more than a year, she had shown no interest in bonding with the child.

The grandmother has supervised visitation with the mother's four older children in Connecticut. On her own initiative, she underwent counseling and took parenting classes to help pursue custody of these grandchildren.

S. R. C. J. has been with the same foster parents since her birth; they are the only parents she has ever known, and she has bonded with them. The foster parents have taken care of the child's special needs. They want to adopt the child.

A12A1631. The mother's appeal

*2.     Sufficiency of the evidence*

The mother argues that the evidence fails to support the termination. OCGA § 15-11-94 sets forth the two-step procedure for terminating a parent's rights:

> First, the juvenile court must find parental misconduct or inability, which under OCGA § 15-11-94 (b) (4) (A) requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.

*In the Interest of D. T. A.*, supra, 312 Ga. App. at 27.

(a)    Hearsay

On appeal, the mother argues that the state failed to present sufficient, competent evidence to terminate her parental rights. She argues that some of the evidence upon which the juvenile court based its factual findings -- the reasons for the removal of her four older children -- is hearsay. We disagree.

An investigation social worker with the Connecticut Department of Children and Family Services testified that the four children are in the custody of her department; that the mother had substance abuse issues; and that the mother and father engaged in domestic violence. The mother never objected to this testimony as hearsay, and the record does not show that the social worker lacked personal knowledge of the facts in her testimony. "Where a witness testifies to a conclusion of fact which could be within his knowledge and such testimony is admitted without objection, it cannot be attacked on review as being incompetent or insufficient." (Citations omitted.) *Willingham v. State*, 296 Ga. App. 89, 90 (673 SE2d 606) (2009). See also *Floyd v. State*, 100 Ga. App. 453 (1) (112 SE2d 171) (1959) ("Unless it affirmatively appears that evidence is hearsay, and where it is of such a nature that it is possible for the witness who testifies thereto to personally know thereof, it ought not to be excluded.") (citations omitted).

Furthermore, the facts related to the removal of the four older children from the mother's custody were memorialized in the juvenile court's previous orders in the deprivation proceeding, which the mother never appealed. See *In the Interest of G. A. M.*, 302 Ga. App. 177, 178 (690 SE2d 472) (2010) (factual findings in unappealed deprivation order binding for purposes of termination hearing). The juvenile court took judicial notice of those orders, and the mother affirmatively stated she had no objection. "Under these circumstances, the [s]tate's case cannot be dismissed as hearsay." (Citations omitted.) *In the Interest of M. D. L.*, 285 Ga. App. 357, 359 (646 SE2d 331) (2007).

We acknowledge that the juvenile court's order includes certain findings that may be based on hearsay. But "even if the juvenile court did consider hearsay, this will not constitute reversible error if the other evidence introduced at the termination hearing, excluding the hearsay, supports the juvenile court's findings and conclusions." *In the Interest of E. G.*, 284 Ga. App. 524, 531 (3) (644 SE2d 339) (2007). And we find that the other, admissible evidence supports the termination of the mother's parental rights.

(b) Likelihood that deprivation will continue

The mother argues that no evidence showed that deprivation is likely to continue. Specifically, she argues that the juvenile court improperly relied on her past unfitness to terminate her parental rights. The mother is correct that

> [e]vidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in . . . her natural child; clear and convincing evidence of *present* unfitness is required. But the trial court is entitled to consider evidence of the [mother's] past actions in determining whether the deprivation is likely to continue. It is not bound by mere promises to do better in the future.

(Citations and punctuation omitted; emphasis in original.) *In the Interest of A. B.*, 283 Ga. App. 131, 136-137 (1) (c) (640 SE2d 702) (2006).

Clear and convicting evidence supported the finding of the mother's present unfitness. The mother failed to meet almost all of the goals of the case plan. She failed to complete parenting classes. She failed to show that she had a source of income to support her child. She failed to provide DFCS with verification of housing. Although the mother met the goal of obtaining a substance abuse assessment, she failed to show that she completed the recommendations from the assessment. The mother did not pay any of the required child support. She had not seen the child for the five months preceding the termination hearing. She failed to keep DFCS informed

9

of her whereabouts, and DFCS lost contact with her; she did not even maintain contact with her own attorney and learned of the termination hearing only through published notice.

We have found similar evidence in past cases sufficient to support a finding that deprivation is likely to continue.

> While the trial court is entitled to consider evidence of the parents' past actions in determining whether the deprivation is likely to continue, this case does not rest on past unfitness. The mother . . . [has] failed to show that [her] present circumstances are any different than they were when the [child was] removed from [her] and adjudicated deprived. The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact.

(Citations omitted.) *In the Interest of C. A. S.*, 291 Ga. App. 204, 207 (661 SE2d 612) (2008). See also *In the Interest of S. H.*, 296 Ga. App. 768, 772 (1) (675 SE2d 619) (2009) (evidence of present unfitness supported termination where mother was in process of completing drug treatment program but had not obtained stable housing or employment and had six other biological children that were not in her care); *In the Interest of C. A. S.*, 291 Ga. App. 204, 207 (661 SE2d 612) (2008) (no evidence of stable housing or income, prospects for employment or any significant efforts to comply with case plan). We find that the evidence supports the juvenile court's

finding by clear and convincing evidence of the mother's present unfitness and that the causes of the child's deprivation are likely to continue.

(c)   Likelihood that continued deprivation will case serious harm

The mother argues that DFCS presented no evidence that continued deprivation is likely to cause harm to the child. "[T]he same facts authorizing a finding that deprivation is likely to continue *may* also authorize a finding, under the circumstances of an individual case, that the continued deprivation is likely to cause serious harm." (Emphasis in original.) *In the Interest of J. E.*, 309 Ga. App. 51, 57 (1) (d) (711 SE2d 5) (2011). And "where evidence shows no parental bond between parent and child, the child has adapted well to foster care, and the foster parents wish to adopt, this is sufficient to support the conclusion that continued deprivation is likely to harm the child." (Citation omitted.) *In the Interest of D. D. B.*, 282 Ga. App. 416, 420 (1) (638 SE2d 843) (2006).

The record before us, including the mother's failure to show an end to her drug abuse, her failure to provide for the child, the absence of a bond between the mother and the child, the child's bond with her foster parents and the foster parents' wish to adopt, "entitled the juvenile court to draw the conclusion that clear and convincing

11

evidence showed that [the child's] continued deprivation was likely to cause the child serious harm." *In the Interest of J. E.*, supra, 309 Ga. App. at 57 (1) (d).

A12A1632. The grandmother's appeal

*3.    Sufficiency of the evidence*

The grandmother argues that the juvenile court erred by denying her petition for custody of the child. We cannot substitute our judgment for a juvenile court's judgment that relative placement was not in the best interest of a child. *In the Interest of S. V.*, 281 Ga. App. 331, 332 (2) (636 SE2d 80) (2006). "The trial court had the opportunity to question and observe the parties and witnesses, and possesses a wide discretion in determining the issues before it, and if the judgment is supported by any evidence and is not clearly erroneous, an appellate court is not authorized to set it aside." Id.

(a)    Hearsay

The grandmother argues that the juvenile court considered hearsay evidence, namely unsubstantiated drug tests of the mother. As discussed above, even if the juvenile court considered this hearsay evidence, sufficient, admissible evidence supported the termination of the mother's parental rights.

(b)    Placement with family members

12

The grandmother argues that the juvenile court erred by failing to consider family members for placing the child. Although OCGA § 15-11-103 (a) (1) formerly required the juvenile court first to attempt to place with a relative of a child whose parents' rights have been terminated, in 2010 the General Assembly amended the statute to remove that requirement. 2010 Ga. Laws 286, 291 § 11. Juvenile courts no longer have the obligation to attempt to place a child with relatives. OCGA § 15-11-103 (a) ("Upon the entering of an order terminating the parental rights of a parent, a placement may be made only if the court finds that such placement is in the best interest of the child . . . ."). And even prior to the amendment, the juvenile court was not required to give preference to family members in making a placement of a child following termination of parental rights. *In the Interest of S. V.*, supra, 281 Ga. App. at 332 (2).

The grandmother argues that DFCS should have considered placing the child with a maternal aunt, but that aunt withdrew her petition for custody. And the agency did not evaluate the grandmother as a placement option because she had shown no interest in bonding with the child until the child had been in DFCS custody for a year. In fact, the grandmother has never seen the child and called DFCS only once about the child.

(c)     Regulations under the Interstate Compact on the Placement of Children

The grandmother argues that DFCS failed to comply with certain time limitations included in the regulations to the Interstate Compact on the Placement of Children, OCGA §§ 39-4-1 through 39-4-10. But she has not shown that Georgia has adopted the regulations, which are not part of the Georgia code section and are not found in the rules and regulations of the state of Georgia. See generally Ga. Comp. R. & Regs. Title 290, Chapter 2 (rules of the Georgia Department of Human Resources, Family and Children Services).

(d)     Limitation of cross-examination

The grandmother argues that the testimony of a state of Connecticut caseworker was improperly limited because of the witness's time constraints. The witness testified by telephone and informed the court and the parties at the beginning of her testimony that she would have to leave because of childcare issues. The grandmother's attorney cross-examined this witness and never requested additional time or indicated in any way that she had not completed her cross-examination. Her "failure to interpose a timely objection at trial precludes consideration of an objection raised for the first time on appeal." (Citation omitted.) *Sloan v. State*, 172 Ga. App. 620, 622 (7) (323 SE2d 834) (1984).

*Judgments affirmed. Barnes, P. J., and Adams, J., concur.*